### A01A2543. LEWIS v. THE STATE.
(560 SE2d 73)

SMITH, Presiding Judge.

Jumal Lewis was convicted of criminal damage to property in the second degree and two counts of simple assault. Following the denial of his motion for new trial, he appeals, contending that the evidence

---

was insufficient to convict him of simple assault. We find no error, and we affirm.

Construed in favor of the jury's verdict, evidence was presented that the two victims were standing and talking on the porch of a relative's apartment when they saw Lewis approaching them. One victim testified that Lewis was "almost running towards us. And he came right up about five inches, six inches from our face" and asked the victims what they were laughing at and why they were laughing at him. Lewis asked, " 'Don't you know I'll kill you? Don't you know who I am?' " According to this victim, Lewis "was working himself up into a frenzy" and was "cursing and telling us that he will kill us and he will cut our throats. . . . [W]hatever threat you can think of, that is what he was uttering." Lewis "was extremely agitated" and was "being very, very threatening." One of the victims "thought he was going to punch either myself or" the other victim. This victim "expected some physical interaction." He testified that Lewis said several times that he would kill or cut them, "as if he had a knife." Lewis also stated that he would " 'destroy' " them. The other victim similarly testified concerning Lewis's demeanor and his threats. He stated that Lewis threatened to kill him. He also testified that Lewis told him, " 'I can stab you, I can shoot you.' And he was the undisputed champion, and if I wanted him to prove to me that he was the undisputed champion then he could do it right now."

The other victim testified that he realized that Lewis did not have a weapon in his waistband while Lewis "was up in our faces basically making threats." At that time, the victim walked to his car, approximately ten feet away, and took his firearm from the trunk. It was holstered, and he put it in his waistband, behind his back, and walked back and joined the other victim. He felt that he needed the gun because he was "fearful for my safety and for the safety of" the other victim. Although he knew Lewis did not have a gun in his waistband, he did not know whether he had "something else in his pockets or if he had something at his ankle." He did not pull the gun on Lewis, but he wanted "to make sure I can protect myself if he does decide to do something."

After this witness returned to the side of the other victim, both began to walk inside the apartment where they had been visiting family, and Lewis saw the firearm. Lewis said, " 'Okay, you've got a gun. You've got a gun. Okay. I'm going to go get something. I'll be right back.' " He went inside another apartment, and the victims called the police. The victims stayed inside their family member's apartment and watched as Lewis came back outside "more belligerent than he was even before" and was swearing and making threats, not directly toward the victims, but "to the neighborhood in general." He kicked a car in the parking lot and "was just up and down like a

mad man." When the police arrived, Lewis struggled with them and was arrested. Neither victim had ever seen Lewis before this incident.

A person commits the offense of simple assault when he or she "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (2). This offense is complete if the assailant has made "such a demonstration of violence, coupled with an apparent ability to inflict injury so as to cause the person against whom it is directed reasonably to fear the injury unless he retreats to secure his safety. [Cit.]" *Hise v. State*, 127 Ga. App. 511 (194 SE2d 274) (1972). And as correctly pointed out by Lewis, because assault is an attempted battery, the State must show that a "substantial step" was made toward committing the battery in order to sustain a conviction for simple assault. *Hamby v. State*, 173 Ga. App. 750, 751 (2) (328 SE2d 224) (1985). Furthermore, the mere threat to commit a violent injury on a victim, without more, does not constitute an assault. Id.; see also *Johnson v. State*, 158 Ga. App. 432, 433 (280 SE2d 856) (1981).

Relying primarily on *Johnson*, supra, Lewis argues that his actions were mere verbal threats that did not constitute a simple assault and that he did not take a "substantial step" toward completing a battery. We do not agree. In *Johnson*, the defendant was a picketing employee outside an industrial plant. As the personnel manager drove his automobile slowly through the picketers, from approximately five feet away, the defendant raised his hand and either pointed or shook his finger at the manager and said, " 'We are going to get you.' " Id. at 432-433. He did or said nothing more, and the vehicle drove on to the plant. The State offered no evidence that the victim felt he was in danger at the moment, that he fled to avoid danger, or that the defendant was in a position to inflict injury at that time. Id. at 433. This court reversed the defendant's conviction for simple assault, finding "a complete absence of evidence to establish that [defendant] had the present ability to inflict a violent injury," that the manager feared any immediate injury, or that the defendant's actions or words would cause a reasonable person to fear immediate injury. Id.

The facts of this case are distinguished from those in *Johnson*. Of course, the events occurring *after* Lewis saw the two victims retreat, stated to them that he had to "go get something," and then returned belligerently to the parking lot after the victims had gone inside another apartment would not constitute simple assault. There was no showing, at *that* time, that the victims had a reasonable apprehension of *immediate* bodily injury. See id. at 433; *Hudson v. State*, 135 Ga. App. 739, 741 (1) (218 SE2d 905) (1975) (no simple assault when defendant told police he was going into another room to

get gun and therefore no apprehension of immediate bodily injury). In other words, the apprehension of future injury is not sufficient to convict a defendant of simple assault. Id.; see also *Johnson*, supra at 433.

But *before* Lewis briefly left the scene and the two victims went inside the apartment, Lewis threatened to harm and kill the victims from very close range. Although he did not appear to have a weapon such as a gun or knife in his hands or pants pockets, one of the victims could not determine whether any other weapon was concealed on Lewis's person, and this victim believed Lewis might strike him or the other victim. And Lewis had the present ability to do so, given his close proximity to the victims. The witness who retrieved his firearm did so because he feared for the safety of himself and the other victim. Given Lewis's demeanor and actions when he made several threats directly toward the victims while standing only inches away from them, we conclude that a rational trier of fact could have found that a substantial step had been taken toward harming the victims, that these victims had a reasonable apprehension of receiving immediate physical injury, and that a reasonable person would have felt the need to retreat in order to avoid receiving such injury. We therefore affirm the judgment of the trial court.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED FEBRUARY 5, 2002.

*Laila A. Washington*, for appellant.
*J. Tom Morgan, District Attorney, Jeanne M. Canavan, Steven C. Chen, Assistant District Attorneys*, for appellee.