A05A0906. LAWSON v. THE STATE.
(620 SE2d 600)

PHIPPS, Judge.
Jerry Lee Lawson was charged with burglary of a dry cleaning business, aggravated assault by assaulting Gail Gentry with the intent to rob, simple battery of Gentry by striking her arm, obstruction of a law enforcement officer, criminal trespass of a residence, and marijuana possession. At his trial, the court directed a not guilty verdict on the drug charge, and the jury acquitted Lawson of burglary. Lawson was found guilty and convicted of all remaining charges, and

his subsequent motion for new trial was denied. On appeal, Lawson contends that the evidence was insufficient to support the jury's verdicts on the aggravated assault and simple battery charges. In addition, he contends that the trial court erred in allowing into evidence a statement he made to a police detective, in not merging his convictions of aggravated assault and simple battery, and in determining that he was not deprived of effective assistance of counsel. Because Lawson has failed to demonstrate any reversible error, we affirm.

1. Lawson contends that the evidence was insufficient to support the jury's verdicts on the aggravated assault and simple battery charges. When a criminal defendant challenges the sufficiency of the evidence supporting a conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence.[1] As an appellate court, we do not weigh the evidence, judge the credibility of witnesses, or resolve evidentiary conflicts.[2] The relevant question for this court is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3] As long as there is some competent evidence to support each element necessary to make out the state's case, the jury's verdict will be upheld.[4]

Viewed in this light, the state's evidence showed that on April 7, 2001, a man wearing a mask and a hat walked through the back entrance of a dry cleaning business, went to the cash register, and opened the cash drawer. Gentry, who was employed there at her family's business, ran to the register, slammed the drawer shut, locked it, and grabbed the register key. The man made repeated demands for money. The two had a "hand fight" for the key, and the man beat Gentry's arm with his fist, which left bruises. Gentry "kind of fought him off," and the man began banging on the register with both hands in an unsuccessful attempt to open it. Meanwhile, a customer known to Gentry entered the business, and she asked him to call the police on his cell phone. Gentry then ran into an office and called the police. The customer saw the masked man trying to break into the cash register; then, right away, the masked man fled the scene. At trial, Gentry recounted, "The perpetrator had his hand wrapped around his shirt with a — like he had a gun. Did not see a gun, he had his hand wrapped around it, but when I was going to the office I didn't know if I was fixing to be shot or not. . . ."

---

[1] *Neal v. State*, 271 Ga. App. 283, 285 (1) (609 SE2d 204) (2005).

[2] Id.

[3] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Neal*, supra.

[4] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

Gentry described the perpetrator and his clothing to a responding police officer, who then searched the area for a suspect. Within a five-minute walk from the business, the officer saw a person (identified later as Lawson) walking and noted that this person and his clothing matched Gentry's description. When the officer applied the brakes on his patrol car, Lawson sprinted away. The officer yelled for Lawson to stop, identified himself as a police officer, and then chased Lawson on foot. Lawson ran through a nearby residence, knocking down and damaging its back door, before the officer apprehended him in bushes behind the house. Within ten minutes of the attempted robbery, Lawson was taken to the dry cleaning business, where Gentry and another employee who had witnessed the episode identified him as the perpetrator by his voice and clothing. In addition, the customer who had entered the business during the episode identified Lawson as the perpetrator based on his race, height, build, and clothing.

Lawson was arrested and read his *Miranda* rights. He waived those rights and gave a statement to police denying that he had been at the dry cleaning business and claiming that he had run from the officer because "I had a marijuana cigarette in my pocket." Also on the day of the incident, Gentry found in the business the hat that the masked man had been wearing when he entered the store. She turned the hat over to police, and Lawson gave another statement to police admitting that the hat belonged to him. The hat was admitted into evidence.

Challenging the sufficiency of the evidence, Lawson points to what he claims are weaknesses and inconsistencies in the evidence. Such evidentiary issues, however, were for the jury to decide.[5] Because there was competent evidence to support each element necessary to make out the state's case relative to the aggravated assault and simple battery charges, we uphold the jury's verdicts.[6]

2. Lawson contends that the trial court erred in admitting into evidence his statement to police that the hat was his. He argues that the statement was obtained through questioning that violated his Sixth Amendment right to counsel. Lawson asserts that after he had asked for an attorney, a police detective initiated impermissible questioning of him. Outside the presence of the jury, the trial court conducted a hearing on the admissibility of the statement and determined that Lawson had initiated the discussion about the hat and that he had voluntarily admitted to owning it.

---

[5] *Neal*, supra; *Rudisail v. State*, 265 Ga. App. 293, 294 (2) (593 SE2d 747) (2004).

[6] See *Neal*, supra; *Mack v. State*, 263 Ga. App. 186, 187 (1) (587 SE2d 132) (2003); *Ringo v. State*, 236 Ga. App. 38, 40 (510 SE2d 893) (1999).

At the hearing, only the state presented evidence. It showed that about a week after the criminal incident, the police questioned Lawson a second time. He responded that he would answer no further questions without an attorney. The questioning ceased, and Lawson thereafter obtained representation. In October 2001, a police detective who had obtained a search warrant to obtain a sample of Lawson's hair approached Lawson, while he was sitting in a courtroom for calendar call, to serve and execute the warrant. When Lawson told the detective that he wanted to talk to her, she responded that he needed to consult with his attorney first. Lawson's attorney advised him not to give any statement without their first talking further, but to cooperate with the execution of the warrant. While the detective was escorting Lawson to an office to execute the warrant, Lawson volunteered to the detective that, despite his attorney's advice, he wanted to give a statement that the hat was his. After the detective *Mirandized* Lawson, Lawson executed a waiver which stated, among other things, "I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer at this time." And in his subsequent statement to police, Lawson admitted, "The hat does belong to me. . . . You're welcome to my hair, but I can save you some time. It's mine."

"Under *Edwards v. Arizona*,[7] authorities may not interrogate a suspect who has requested an attorney, unless counsel is made available to the accused or the accused initiates further communication with the police."[8] The evidence presented authorized the trial court to conclude that Lawson had voluntarily initiated the discussion about the hat with the detective and that he knowingly and intelligently waived his right to counsel before making his statement.[9] Thus, the trial court did not err in admitting the challenged statement.

3. Lawson contends that the trial court erred by convicting him of both aggravated assault and simple battery. According to Lawson, the simple battery offense should have been merged as a matter of fact into the aggravated assault because the same conduct — striking Gentry's arm — was used to prove both crimes.

> In determining whether one crime factually merged into another, the dispositive issue is whether the state used up its evidence in proving the crime. If the state uses up all the

---

[7] 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981).

[8] *Haynes v. State*, 269 Ga. 181, 183 (4) (496 SE2d 721) (1998) (emphasis omitted).

[9] See id. at 183-184; *Garner v. State*, 267 Ga. 884, 885 (3) (485 SE2d 729) (1997).

evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under OCGA § 16-1-6.[10]

We reject Lawson's contention because he has failed to show that the aggravated assault was established by the same facts used to prove the simple battery.[11] Simple assault is defined as "an act which places another in reasonable apprehension of immediately receiving a violent injury."[12] "This offense is complete if the assailant has made such a demonstration of violence, coupled with an apparent ability to inflict injury so as to cause the person against whom it is directed reasonably to fear the injury unless [she] retreats to secure [her] safety."[13] An assault becomes aggravated when it is committed with the intent to rob.[14] Evidence that Lawson entered the store with a mask concealing his face, that he opened the cash drawer, that he attempted to wrangle a key from Gentry's hand after she locked the cash drawer, that he made repeated demands for money, that he banged his hands on the register, and that he appeared to have been holding a gun, causing Gentry to retreat to the office in fear that he would shoot her, sufficiently authorized the jury to find that Lawson had committed aggravated assault.[15]

None of this evidence was required to prove that Lawson had also committed simple battery. Simple battery may be committed by intentionally causing physical harm to another.[16] Evidence of Lawson's bruising blows to Gentry's arm sufficiently established the elements of that crime.[17]

4. Lawson contends that the trial court erred in determining that he was not deprived of effective assistance of counsel.

To prove ineffectiveness of trial counsel, the defendant must show that his trial counsel's performance was deficient and that the deficient performance prejudiced him.[18]

---

[10] *Fraser v. State*, 263 Ga. App. 764, 766 (2) (589 SE2d 329) (2003) (punctuation and footnote omitted); see also *Curtis v. State*, 275 Ga. 576, 577 (1) (571 SE2d 376) (2002).

[11] See *Woods v. State*, 250 Ga. App. 164, 167-168 (2) (550 SE2d 730) (2001).

[12] OCGA § 16-5-20 (a) (2).

[13] *Lewis v. State*, 253 Ga. App. 578, 580 (560 SE2d 73) (2002) (citation and punctuation omitted).

[14] OCGA § 16-5-21 (a) (1).

[15] See *Lewis*, supra (evidence was sufficient to convict defendant of simple assault where defendant demonstrated violence through verbal threats and damage to property, coupled with an apparent ability to inflict injury, causing victims to reasonably fear injury unless they retreated).

[16] OCGA § 16-5-23 (a) (2).

[17] See generally *Pennymon v. State*, 261 Ga. App. 450, 454 (5) (582 SE2d 582) (2003).

[18] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

To meet the first prong of this test, he must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. To meet the second prong, [the defendant] must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different.[19]

Furthermore, in considering a claim of ineffectiveness of trial counsel, a court is not required to address the performance portion of the inquiry before the prejudice component or even to address both components if the defendant has made an insufficient showing on one.[20] In reviewing a trial court's determination of a claim of ineffective assistance of counsel, we give deference to that court's factual findings, which are upheld on appeal unless clearly erroneous; however, we review the trial court's legal conclusions de novo.[21]

(a) First, Lawson argues that his trial counsel's performance was deficient because counsel placed his character into evidence by telling the jury during opening statement, "I think the evidence will show that [Lawson] had some cocaine — marijuana in his pocket . . . [w]e're just admitting this, okay." At the hearing on the motion for new trial, Lawson's trial attorney testified that Lawson had maintained to him that he had run from the police because he was in possession of contraband and not because he had attempted robbery. Lawson's attorney revealed that his overall strategy was to admit to the lesser charges to get acquittals on the more serious ones and explained that he therefore used the marijuana possession as an explanation for why Lawson had run from the police. "Although another lawyer may have conducted the trial differently, this does not mean that [Lawson] did not receive a vigorous and complete defense. In fact, [Lawson] was acquitted for [burglary, one] of the serious crimes for which he was being tried."[22] Moreover, Lawson had admitted possessing marijuana in a statement to police. In light of all the circumstances that existed at the time of the trial, we conclude that Lawson has failed to

---

[19] *Pruitt v. State*, 279 Ga. 140, 143-144 (5) (611 SE2d 47) (2005) (citations and punctuation omitted).

[20] *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993).

[21] *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).

[22] *Mosely v. State*, 267 Ga. App. 275, 279 (2) (599 SE2d 252) (2004) (punctuation and footnote omitted).

overcome the strong presumption that his counsel's performance fell within the bounds of reasonable professional conduct.[23]

(b) Next, Lawson argues that his trial counsel's performance was deficient because he failed to object to the admission of the hat into evidence, asserting that it was admitted into evidence "without a proper independent evidentiary foundation of it's [sic] authenticity." But Gentry identified the hat entered into evidence as the one worn by Lawson during the criminal incident and the one she found abandoned on the floor of the dry cleaning business after he fled the scene. Thus, Lawson has shown no basis for objecting to the admission of the hat. A trial counsel's performance is not deficient because counsel failed to make a meritless objection.[24]

(c) Finally, Lawson argues that his trial counsel's performance was deficient because the attorney failed to adequately investigate his case. However, Lawson does not show how additional investigation would have changed the outcome of his trial. Consequently, he has failed to establish prejudice to his defense.[25]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 1, 2005.

*Donarell R. Green IV*, for appellant.
*Kenneth W. Mauldin, District Attorney, Kelly E. Cucuzza, Assistant District Attorney*, for appellee.

---

[23] See id.
[24] See *Simpson v. State*, 277 Ga. 356, 358-359 (4) (a) (589 SE2d 90) (2003).
[25] See *Washington v. State*, 274 Ga. 428, 430 (2) (554 SE2d 173) (2001).