A05A1778. NELSON v. THE STATE.
(629 SE2d 410)

BERNES, Judge.

A Fulton County jury found Ray Nelson guilty of four counts of aggravated assault and one count of kidnapping with bodily injury. Following the denial of his motion for new trial, Nelson filed this appeal. Nelson contends the trial court erred by: (1) failing to direct a verdict of acquittal on all counts; (2) failing to merge certain counts during sentencing; (3) allowing jury selection to proceed despite the absence of a qualified juror; (4) giving an incorrect charge to the jury on kidnapping with bodily injury; and (5) permitting an alternate to go out with the jury during deliberations. Nelson also asserts that he received ineffective assistance of counsel. Finding no error, we affirm.

1. Nelson contends that the trial court erred by failing to direct a verdict of acquittal on all five counts.[1] "The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction." *Bollinger v. State*, 259 Ga. App. 102 (1) (576 SE2d 80) (2003). Under that standard, the evidence must be viewed in a light most favorable to the verdict and Nelson no longer enjoys the presumption of innocence. *Pollard v. State*, 230 Ga. App. 159 (495 SE2d 629) (1998). In considering the sufficiency of evidence, we do not determine the credibility of witnesses but only consider the sufficiency of evidence. *Vickers v. State*, 241 Ga. App. 452, 453 (527 SE2d 217) (1999). "The relevant question for this court is whether any rational trier of fact could have found the essential elements of the crime beyond a

---

[1] The record reflects that at trial, Nelson raised a motion for directed verdict of acquittal only as to the kidnapping with bodily injury count. Because Nelson failed to make a motion as to the remaining counts, the trial court did not err by failing to direct a verdict of acquittal sua sponte on these counts. See *McCord v. State*, 182 Ga. App. 586 (1) (356 SE2d 689) (1987); *Williams v. State*, 161 Ga. App. 400 (1) (288 SE2d 338) (1982). Nonetheless, since Nelson challenges the sufficiency of the evidence to support his conviction on all counts, his claims are reviewed herein in accordance with *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

reasonable doubt. As long as there is some competent evidence to support each element necessary to make out the state's case, the jury's verdict will be upheld." (Footnotes omitted.) *Lawson v. State*, 275 Ga. App. 334, 334 (1) (620 SE2d 600) (2005).

So viewed, the evidence shows that Nelson, nicknamed "Rock," was an acquaintance of Marcus Mack, the son of Beverly and Clarence Mack. Beverly Mack had first met Nelson several years earlier and had seen him on a few other occasions before the night of the attack. On August 5, 2001, at about 10:00 p.m., Nelson came to the door while Beverly Mack was home alone. She recognized Nelson and consequently allowed him inside to use the telephone. As Nelson started flipping rapidly through the phone book, she sensed something was amiss. Suddenly, Nelson pulled what resembled a steak knife from his pocket and ordered her down on the floor. Instead of complying, she grabbed his hand. A struggle ensued and she fell on the floor of the living room. Nelson then struck her in the head with various objects including a telephone, decorative bowl, and a vase. When she tried to sit up, Nelson grabbed a ceramic lamp from a nearby table and struck her with it. She remembered falling after being hit in the head with the lamp.

Clarence Mack arrived home at approximately 10:45 p.m. As he entered the kitchen, Nelson grabbed him from behind, saying "give me your money or I'm going to kill you." Mack fought with Nelson and managed to free himself as he was being choked by Nelson. Mack suffered cuts and bruises as a result of the attack. Before Nelson fled the scene, he told Mack that his wife was tied up in the bathroom.

When Mack ran back to the bathroom, he discovered his wife on the floor lying in a pool of blood. Beverly Mack was still breathing but was unconscious and had an electrical cord wrapped tightly around her neck. Her scalp lay open and she was bleeding profusely. The base of a table lamp had pierced her skull and remained embedded in her scalp, as did ceramic pieces from the bathroom toilet.

When paramedics arrived, Beverly Mack's condition was critical. A paramedic estimated that she had lost a fifth of her total blood volume and was within two or three minutes of death. As a result of the attack, she suffered a broken jaw, a broken arm, and head injuries which required, inter alia, the surgical insertion of a plate.

Crime scene photographs showed blood and broken objects in the kitchen, living room, hallway, and bathroom. Blood was spattered, dripped, and pooled, especially along the walls of the hall leading to the bathroom and on the bathroom floor. Nelson's palmprints and fingerprints were lifted from blood on the bathroom wall. A few days after the attack, when Beverly Mack was able to speak, she told her

son, "Rock [(Nelson)] did it." While still hospitalized, she reported to police that Nelson was the attacker, and at trial, she identified Nelson as her attacker.

Nelson's supervisor testified at trial that Nelson had missed work in early August. When Nelson returned to work he had a mark on his head and scrapes on his knuckles. Nelson told his supervisor that two guys jumped him on the street and that he probably hurt them "real bad." Nelson expressed concern that one of the men could identify him and disclosed that police might be looking for him. Throughout the trial, Nelson's defense theory was that Clarence Mack had attacked his wife after discovering her intimate involvement with Nelson, then had tried to shift the blame to Nelson. Rejecting that theory, the jury found Nelson guilty of the indicted offenses. Nelson contests his multiple convictions for aggravated assault. Count 1 charged Nelson with the aggravated assault of Beverly Mack by threatening her with a knife, Count 2 charged him with aggravated assault by striking her with a lamp post and Count 3 charged him with aggravated assault by choking her with an electrical cord. Beverly Mack testified that Nelson threatened her with a knife and struck her with a lamp. She was found in the bathroom with an electrical cord wrapped tightly around her neck. Nelson's fingerprints and palmprints were lifted from blood on the bathroom wall. Based on this evidence, any rational trier of fact could have found Nelson guilty of the three counts of aggravated assault as charged in the indictment. OCGA § 16-5-21 (a) (2); *Carter v. State*, 246 Ga. App. 891, 892 (1) (a) (543 SE2d 42) (2000); *Marsh v. State*, 151 Ga. App. 637 (1) (260 SE2d 761) (1979); *Talley v. State*, 137 Ga. App. 548, 550 (1) (224 SE2d 455) (1976).

While Nelson claims there were inconsistencies in the testimony of the state's witnesses, and that the state's version of events was implausible, such evidentiary matters were for the jury to decide. "As an appellate court, we do not weigh the evidence, judge the credibility of witnesses, or resolve evidentiary conflicts." *Lawson*, 275 Ga. App. at 335 (1). We address Nelson's arguments as to the two remaining counts in Divisions 2 and 3 below.

2. Nelson contends the state failed to prove his identity as the perpetrator of the aggravated assault upon Clarence Mack. Although it is true that Mack could not identify his assailant, the facts and circumstances surrounding the crime including the timing of the attack and the assailant's words, were sufficient to authorize the jury to conclude that the person who attacked Beverly Mack, i.e., Nelson, also attacked Clarence Mack. See *Clark v. State*, 275 Ga. 220, 221 (1) (564 SE2d 191) (2002).

3. As to the remaining count, kidnapping with bodily injury, Nelson claims that the evidence failed to establish either the asportation or bodily injury elements of the crime.[2] "Only the slightest movement of the victim is required to constitute the necessary element of asportation." (Citation and punctuation omitted.) *Gibson v. State*, 233 Ga. App. 838, 841 (4) (a) (505 SE2d 63) (1998). Evidence of any physical injury, however slight, satisfies the bodily injury element necessary to establish kidnapping with bodily injury. See *Green v. State*, 193 Ga. App. 894, 896 (1) (389 SE2d 358) (1989).

Here, Beverly Mack denied that she had voluntarily walked to the bathroom, where she was ultimately found. There was blood spattered in the hallway and on the bathroom cabinet and walls. When Beverly Mack was discovered, her body was wedged between the bathtub and toilet, ceramic pieces from the toilet base were embedded in her scalp, and an electrical cord was tied around her neck. Given this evidence, the jury was authorized to conclude that Nelson forced Beverly Mack, who may have been unconscious, down the hallway into the bathroom where he then injured her by pushing her head into the toilet base and by choking her with the electrical cord. See *Carter v. State*, 268 Ga. App. 688, 689-690 (603 SE2d 56) (2004). Any rational trier of fact could have found beyond a reasonable doubt that Nelson committed the crime of kidnapping with bodily injury.

4. Nelson asserts that the trial court erred by failing to merge his convictions at sentencing. Nelson claims that the three counts of aggravated assault involving Beverly Mack merged with his conviction for kidnapping with bodily injury as a matter of fact. "The key question in determining whether a merger has occurred is whether the different offenses are proven with the same facts. For example, if one crime is complete before the other takes place, the two crimes do not merge. However, if the same facts are used to prove the different offenses, the different crimes merge." (Citations and punctuation omitted.) *Reeves v. State*, 233 Ga. App. 802, 805 (2) (505 SE2d 540) (1998).

In this case, the aggravated assaults perpetrated by Nelson with the knife and lamp base were clearly complete before the kidnapping with bodily injury took place and therefore do not merge. However, the state has conceded and we so hold that the aggravated assault based on Nelson's choking of the victim with the electrical cord merged into the kidnapping with bodily injury. Accordingly, the

---

[2] "A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against [her] will." OCGA § 16-5-40 (a). Furthermore, "if the person kidnapped shall have received bodily injury, the person convicted shall be punished by life imprisonment or by death." OCGA § 16-5-40 (b).

sentence imposed for Count 3 of aggravated assault is hereby vacated. *Headspeth v. State*, 266 Ga. App. 414 (a), (b) (597 SE2d 503) (2004).

5. Nelson contends that the trial court erred in allowing jury selection to take place in the absence of a qualified juror, Juror No. 15, who had not been excused for cause or hardship or struck by either party. The transcript indicates that Juror No. 15 participated in voir dire and later was individually questioned. Nelson now claims that Juror No. 15 was not present when the jury was struck. Nelson has not cited and we have not found any support in the record that supports his assertion. Moreover, there was no objection of record indicating that Juror No. 15 was absent during jury selection. Instead, the record shows that the trial court excused two jurors and specifically noted "that leaves us with 34 qualified jurors." The parties proceeded to select 12 jurors and an alternate, and the remaining jurors were excused.

To the extent that Nelson failed to object to the absence, if any, of Juror No. 15 and failed to file a written challenge to the array, his claim has been waived. See OCGA § 15-12-162; *Lysfjord v. State*, 208 Ga. App. 811, 812 (2) (432 SE2d 247) (1993). Since the record shows without dispute that Nelson was not denied a full panel of 30 qualified jurors from which the 12 jurors were selected, there was no error. See OCGA § 15-12-160; *Shuler v. State*, 213 Ga. App. 790, 791 (1) (446 SE2d 225) (1994).

6. Nelson contends that the trial court erred in charging the jury regarding kidnapping with bodily injury by stating: "[y]ou must find that bodily injury occurred in conjunction with the alleged kidnapping." He argues that the trial court erred by using the phrase "in conjunction with" because that phrase implies "some connection [but] not necessarily occurring at the same time." However, there is no requirement that the injury occur at the precise moment the victim is first kidnapped.

> The crime of kidnapping with bodily injury under OCGA § 16-5-40 (b) requires only that an injury, no matter how slight, occur *during* the kidnapping incident. Thus, contrary to [Nelson's] argument, whether the bodily injury occurs at the beginning of the kidnapping incident or after the victim has been abducted is immaterial for purposes of proving the elements of the crime.

(Citations omitted; emphasis in original.) *James v. State*, 239 Ga. App. 541 (521 SE2d 465) (1999). The trial court's charge on bodily injury was not erroneous.

7. Nelson asserts that the trial court erred in allowing the alternate juror to go out with the jury during deliberations and in failing to ascertain prior to the verdict whether the alternate juror had participated in the deliberations or influenced the other jurors. OCGA § 15-12-171 prohibits an alternate juror from retiring with the jury and witnessing the deliberations. See *London v. State*, 260 Ga. App. 780 (1) (580 SE2d 686) (2003). When, over objection, an alternate remains with the jury after deliberations have begun, a presumption of harm arises which the state must overcome. *Johnson v. State*, 235 Ga. 486, 493 (6) (220 SE2d 448) (1975).

After a recess, the trial court informed the parties that the alternate had inadvertently been allowed to remain in the jury room during deliberations but that a verdict had not been reached and the alternate had been removed from the jury room. Both the state and defense agreed that jury deliberations should proceed. Defense counsel stated: "[y]our honor, the position is that we'd like for the jury to continue their deliberations with the 12 of them now." By failing to lodge any objection after he learned of the alternate juror's presence in the jury room and by expressly agreeing to continue the deliberations, Nelson waived this allegation of error.[3] *London*, 260 Ga. App. at 782 (1).

8. Nelson contends that his trial counsel rendered ineffective assistance. To prevail on an ineffective assistance of counsel claim requires a two-prong showing: that trial counsel's performance was deficient and that the deficient performance was so prejudicial that there is a reasonable likelihood that, but for counsel's error, the outcome of the trial would have been different. *Robinson v. State*, 278 Ga. 31, 34 (3) (597 SE2d 386) (2004). Failure to satisfy either prong is fatal to an ineffectiveness claim. See *Holland v. State*, 250 Ga. App. 24, 28 (4) (550 SE2d 433) (2001). In addition, a defendant must overcome the strong presumption that trial counsel's conduct fell within the broad range of reasonable professional conduct. *Mobley v. State*, 271 Ga. 577, 578 (523 SE2d 9) (1999). Nelson claims that his counsel was deficient in several respects, each of which we consider separately. See *Howren v. State*, 271 Ga. App. 55, 58 (5) (608 SE2d 653) (2004).

(a) Nelson contends that his trial counsel was ineffective for failing to challenge the array when one prospective juror was missing from the panel before jury selection. As discussed in Division 6, Nelson has failed to establish the facts necessary to support his claim.

---

[3] At the motion for new trial hearing, Nelson's trial counsel explained that Nelson did not want a mistrial because at that time, he felt that the trial had gone well for him.

(b) Nelson next contends that his trial counsel was ineffective because she failed to object to certain hearsay testimony given by the investigating detective. The detective explained at trial that he initially considered Clarence Mack a suspect. When the prosecutor asked the detective, "[d]id you follow-up, though, on any thoughts about Mr. Mack?" the detective responded: "[w]e combed the neighborhood, checked with neighbors and spent a great deal of time asking questions if they had ever known them to have any type of domestic problems and we found nothing but one small incident, I think, in their 30 — or 30 something year marriage and we no longer treated him as a suspect."

At the motion for new trial hearing, Nelson's trial counsel explained that she construed the neighbors' lack of knowledge as consistent with her theory that Clarence Mack had abused his spouse, Beverly Mack.

> As the neighbors testified, none of them really even knew the Macks. And canvassing the neighborhood to find out if there had been any problems, they had lived in the neighborhood for 18 years and they didn't know their neighbors. . . . That's basically a sign of a controlling man or some sort of spousal abuse going on when they're self-contained.

Trial counsel further explored this issue during the detective's cross-examination. Her decision to forego any objection was plainly a matter of trial strategy and did not constitute ineffectiveness. See *Graham v. State*, 269 Ga. App. 590, 594 (4) (604 SE2d 651) (2004); *London*, 260 Ga. App. at 783 (4); *Anderson v. State*, 206 Ga. App. 354, 355-356 (2) (426 SE2d 6) (1992).

(c) Nelson also complains of trial counsel's failure to object to the detective's response to a question about Nelson's last known address. The detective testified: "we didn't know of a permanent address. He had been staying . . . with Mrs. Mack's son, Marcus, and Marcus' wife; and his wife said she wanted him out because she felt uneasy." At that point, the trial court immediately directed the prosecutor to ask another question and cautioned the detective, "you need to respond to the question that you're asked . . . without contributing any evidence."

At the motion for new trial hearing, Nelson's trial counsel explained that she believed that interposing an objection would only have drawn further attention to a matter that already had been resolved by the trial court. Trial counsel's failure to object was a reasonable trial strategy and did not amount to ineffective assistance. *Wilburn v. State*, 278 Ga. App. 542, 546 (3) (a) (629 SE2d 267) (2006); *Fairclough v. State*, 276 Ga. 602, 605 (4) (581 SE2d 3) (2003).

(d) Lastly, Nelson contends that his trial counsel was ineffective for failing to object to a portion of the prosecutor's closing argument. The prosecutor argued:

Jury service is unique in that it actually puts crime directly in your hands. Some of you here may serve on a neighborhood watch, you may serve on a PTA . . . and those things are huge, but those things don't give you the ability to directly affect crime the way jury service does and for some of you this may be your only opportunity in your life to do so. As a community, as a country, we preach to people about stopping silence [sic]. Here's your chance.

He claims that the prosecutor improperly tried "to bait the jury into believing that [its] only opportunity to prevent crime in general [was] to convict in this case." Prosecutors are afforded considerable latitude in impressing the jury by using imagery and illustration to impart to the jury its responsibility to enforce the law. See *Philmore v. State*, 263 Ga. 67, 69 (3) (428 SE2d 329) (1993). Exhorting jurors to serve the greater community or appealing to jurors to have an impact on crime in general are not impermissible requests. Thus, trial counsel's failure to object to the prosecutor's argument did not constitute deficient performance and Nelson's claim on this ground fails.

In conclusion, we have separately considered each of Nelson's ineffective assistance claims and find each one lacking in merit. Accordingly, we uphold the trial court's determination that Nelson was not denied effective assistance of counsel.

*Judgment affirmed; sentence vacated on Count 3. Blackburn, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 28, 2006.

*Charles H. Frier*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney*, for appellee.