**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 1, 2013**

# In the Court of Appeals of Georgia

A13A0220. BRADLEY v. THE STATE.

BOGGS, Judge.

After a jury trial, John Bradley was convicted of aggravated assault and armed robbery. His motion for new trial was denied, and he appealed, but his appeal was remanded by this court to allow him to raise an allegation of ineffective assistance of counsel. The motion for new trial based on ineffectiveness was denied, and Bradley appeals, asserting the general grounds, a fatal variance in the indictment, and ineffective assistance of counsel. Finding no error, we affirm.

1. Bradley contends that the State failed to show that he committed an aggravated assault upon the first victim, contending that he merely uttered threats without taking any substantial step towards the commission of a battery. He further contends that he was merely in possession of scissors and did not use them in an

offensive manner. Similarly, he argues that he did not use the scissors offensively to rob the second victim, and he further argues that he did not intend to commit a theft.

Construed to support the jury's verdict, the evidence shows that William Jones, a painter, had fired Bradley after he "messed . . . up" a job. Although Jones testified he had paid Bradley in full for his work the previous week, the day after Bradley was fired he showed up at Jones' house, where Jones and a couple of friends, including Horace Twiggs, had gathered after work. Jones testified that Bradley arrived on a bicycle and then walked up to the house and approached Twiggs with a pair of scissors and challenged him to come out in the road and fight, stating that he wasn't afraid of him or the police. Twiggs, who is disabled, told Bradley, "I can't fight you." Bradley continued to threaten Twiggs while holding the scissors; he was "angry" and "prancing back and forth." Jones went into his house to call police, and Twiggs testified that after Jones left, Bradley "come up to me and told me what he's going to do to me," telling him that "he was going to F me up" while holding the scissors.

When Jones came back outside after calling the police, Bradley asked to borrow ten dollars, and Jones responded that he had no money. Jones walked to the front of the house and Bradley followed him; when they reached the mailbox, Bradley "threw his bicycle down" and "stepped up to [Jones'] face," and demanded money

while first holding the scissors up to Jones and then "put the scissors like this (indicating)." When Jones pulled some money from his pocket, Bradley "snatched" it and fled. Jones agreed that he was "scared when John Bradley came at [him] with these scissors," because "he had a weapon" and he was concerned he might use it.

The officer who responded to the 911 call testified that both Jones and Twiggs were "visibly shaken. Trembling voices. Highly excited. Wide eyes." Based on the information they gave him, he went to a particular apartment in a nearby complex and the man who answered the door identified himself as John Bradley. The officer read him his Miranda rights and then asked him if he was "down on Wisenbaker Lane today." Bradley immediately and spontaneously stated, "I didn't take any money from anybody . . . . He gave me that money. I didn't pull no knife on anybody." He also volunteered that he had used the fifteen dollars to buy alcohol, adding, "I don't know why they were scared."

(a) Bradley first contends that the evidence was insufficient to support a conviction of aggravated assault upon Horace Twiggs. A person commits aggravated assault when he commits an assault "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). And a person

3

commits simple assault when he "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a). The indictment alleged that Davis "did make an assault upon the person of Horace Twiggs with a certain pair of scissors, the same being an object which when used offensively against a person, in the manner then and there used, was likely to result in serious bodily injury or death." And "where the assault element of an aggravated assault charge is predicated on OCGA § 16-5-20 (a) (2), the State is not required to prove that the defendant acted with an intent to injure the victim. Rather, it need only prove that the defendant intended to commit the act which placed the victim in reasonable apprehension of injury." (Citations and punctuation omitted.) *Lee v. State*, ___ Ga. App. ___, slip op. at 7-8 (1) (a) (Case No. A12A2420, decided March 20, 2013).

Bradley points to Jones' testimony that Bradley declared "if [Twiggs] wasn't in my yard, he would – he would hurt him." He contends this showed he had no present intention to attack Twiggs and just "happened to have a pair of scissors in his possession." But Jones testified that Bradley approached Twiggs while holding the scissors and threatened him while "prancing up and down," and Twiggs himself testified that Bradley "come up to me" after Jones went in the house, saying without any qualification that "he was going to F me up" while holding the scissors. Bradley

4

cites *Lewis v. State*, 253 Ga. App. 578, 581 (560 SE2d 73) (2002), for the proposition that an accused must take a "substantial step towards commission of a battery." But in *Lewis*, we held that while a mere verbal threat, without more, does not constitute assault, from the appellant's

> demeanor and actions when he made several threats directly toward the victim[] while standing only inches away from [him], we conclude that a rational trier of fact could have found that a substantial step had been taken toward harming the victim[], that [the victim] had a reasonable apprehension of receiving immediate physical injury, and that a reasonable person would have felt the need to retreat in order to avoid receiving such injury.

Id. The jury could consider Bradley's demeanor, statements, and conduct in threatening a disabled man while standing close to him holding a pair of scissors, as well as Bradley's statements to the investigating officer, and find the evidence sufficient to show a reasonable apprehension of immediate physical injury. Any conflicts in the witnesses' testimony were for the jury to resolve.

The scissors were displayed for the jury, which was authorized to determine whether they were an "object, device, or instrument which, when used offensively against a person, is likely to . . . result in serious bodily injury." OCGA § 16-5-21 (a) (2). *Davis v. State*, 308 Ga. App. 7, 11-12 (1) (b) (706 SE2d 710) (2011)

5

(screwdriver); *Crane v. State*, 297 Ga. App. 880, 883-884 (2) (678 SE2d 542) (2009) (claw hammer). And "[w]hether [Bradley] held the [scissors] in a threatening manner is a question of fact to be resolved by the jury." (Citation and footnote omitted.) *Brown v. State*, 281 Ga. App. 523, 525 (1) (b) (636 SE2d 709) (2006). Viewed in the light most favorable to the prosecution, the evidence showed an aggravated assault.

(b) Bradley also asserts that the evidence showed he had no intent to commit a theft.

> The jury, however, is solely responsible for determining the accused's intent in committing an act, resolving conflicts in the evidence, and judging the witnesses' credibility. OCGA § 16-2-6 (whether an accused committed an act with criminal intention is a question of fact to be resolved by the trier of fact after consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act).

(Citation omitted.) *Gordon v. State*, 294 Ga. App. 908, 910 (1) (670 SE2 533) (2008). While Bradley argues that he did not intend to commit a theft because he believed that Jones owed him money, "[r]obbery is a crime against possession, and is not affected by concepts of ownership. Moreover, the gravamen of the offense of armed robbery is the taking of items from the possession of another by use of an offensive weapon, and not the ownership status of the item taken." (Citations, punctuation, and

6

footnotes omitted.) *Holcomb v. State*, 268 Ga. 100, 105 (5) (b) (485 SE2d 192) (1997) (contraband cannot be owned by anyone but may be object of robbery). In addition, Bradley presented no evidence that Jones owed him money; counsel's questions and arguments are not evidence. *Baker v. State*, 316 Ga. App. 122, 125 (5) (728 SE2d 767) (2012).

We find the evidence sufficient to uphold Bradley's convictions under the standard established in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Bradley also asserts that there was a fatal variance between the indictment and the trial court's instructions to the jury. He appears to be contending that because the trial court did not instruct the jury as to the identity of the victim during that portion of its instructions defining the offense of aggravated assault, the jury might have mistakenly convicted Bradley for aggravated assault upon Jones rather than Twiggs. But even if Bradley had preserved this contention for review[1], it is without merit. The indictment expressly identifies Twiggs as the victim of the aggravated

---

[1]Bradley's original motion for new trial did not raise this alleged error, it does not appear to have been argued at the hearing after remand, and Bradley failed to include in his brief a statement of how each alleged error was preserved as required by Court of Appeals Rule 25 (a) (1). It not having been raised or ruled on below, it is waived. See *Weeks v. State*, 316 Ga. App. 448, 450 (1) (729 SE2d 570) (2012).

assault and Jones as the victim of the armed robbery. The trial court read the indictment to the jury in its entirety in both its preliminary and final instructions to the jury, and we consider the jury charges as a whole, not piecemeal. *Conn v. State*, 300 Ga. App. 193, 197 (3) (685 SE2d 745) (2009). Moreover, "the trial court sent the indictment out with the jury so they could read the specific charges themselves. There was no reversible error. [Cit.]" *Hill v. State*, 228 Ga. App. 362, 364 (2) (492 SE2d 5) (1997).

3. Finally, Bradley asserts ineffective assistance of trial counsel in numerous respects.

> To establish ineffectiveness, [Bradley] must show (1) that counsel's performance was deficient, and (2) that this deficiency so prejudiced his defense that a reasonable possibility exists that the trial's result would have been different but for that deficiency. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.

(Citations, punctuation and footnotes omitted.) *Lovelace v. State*, 241 Ga. App. 774, 775 (3) (527 SE2d 878) (2000).

8

(a) Bradley contends that counsel was ineffective in failing to request numerous jury charges or in failing to object when the trial court declined to give them on request.

(i) We first consider the charges which trial counsel requested: simple assault as a lesser included offense of aggravated assault, and theft by taking as a lesser included offense of armed robbery. "When a claim of ineffective assistance is based on the failure to request a jury charge, the relevant inquiry is whether the charge, if it had been requested, was warranted by the evidence, and if it had been given, whether there is a reasonable probability that it would have changed the outcome of the trial." (Citation, punctuation, and footnote omitted.) *Stewart v. State*, 285 Ga. App. 760, 763 (3) (647 SE2d 411) (2007).

With respect to the charge on simple assault, as discussed in Division 1, supra, the evidence presented showed that Bradley threatened Twiggs while holding a pair of scissors, which he also used while threatening Jones. Bradley relies on *Cordis v. State*, 236 Ga. App. 629 (513 SE2d 45) (1999), to argue that a charge on simple assault as a lesser included offense was required. This is, generally speaking, a correct statement of law.

> Although simple assault is necessarily a lesser included offense of aggravated assault, trial courts need not authorize juries to enter verdicts on the lesser crime in every case. Where the evidence of whether an alleged aggravated assault was committed with a deadly weapon is disputed, however, the refusal to give a properly requested charge on assault as a lesser included offense is error. Here, that issue was clearly disputed, as is reflected by the trial court's instruction that the jury had to decide whether the [object] constituted a deadly weapon.

(Citations and punctuation omitted.) Id. at 630 (1) (broken fragment of plexiglass). And, as in *Cordis*, the jury here asked for clarification of its instructions.[2]

But that does not end our inquiry. In *Cordis*, we were considering a properly preserved objection to a jury charge. Id. Here, in contrast, we are considering an allegation of ineffective assistance of counsel, which warrants reversal only if Bradley shows a reasonable probability that an instruction on the lesser included offense would have changed the outcome of the trial. As in *Cordis*, the jury had to decide whether Bradley's scissors constituted a deadly weapon. But in deciding the companion charge of armed robbery committed nearly contemporaneously and with

---

[2]In *Cordis*, the jury specifically asked if "the charge could be reduced to assault." Id. at 630 (1). Here the jury asked for clarification of armed robbery, robbery by intimidation, simple assault, and aggravated assault, and the trial court re-charged those sections of its original charge.

the same object, the jury did have the option of finding Bradley guilty of the lesser included offense of robbery by intimidation. The jury having determined, despite the availability of a lesser included offense, that the scissors wielded by Bradley were a deadly weapon, there is no reasonable probability that the giving of a charge on simple assault as a lesser included offense would have changed the outcome of the trial. It therefore "follows that his claim of ineffective assistance of counsel was correctly rejected by the trial court." (Citation and punctuation omitted.) *Sigman v. State*, 287 Ga. 220, 222 (2) (695 SE2d 232) (2010) (appellant convicted of felony murder; no reasonable probability that outcome of the trial would have been different if counsel had also requested charges on reckless conduct and simple battery).

With respect to the charge on theft by taking, the trial court correctly charged the requested instruction on robbery by intimidation as a lesser included offense of armed robbery, but refused to charge theft by taking as a lesser included offense. The only evidence presented at trial showed that Bradley was belligerent towards Jones as he demanded and then took money "from the person" of Jones. This constituted robbery in some form, see OCGA § 16-8-40 (a), OCGA § 16-8-41 (a), not theft by taking, which does not require a taking from the presence of a person, and Bradley therefore was not entitled to this charge. *Espinoza v. State*, 243 Ga. App. 665, 667 (2)

11

(534 SE2d 127) (2000) (appellant entitled to charge on robbery by intimidation but not charge on theft by taking when evidence showed intimidation was used to take money from victim, with or without use of replica of weapon).

Moreover, even if trial counsel's performance was deficient, Bradley cannot show prejudice. As with the charge of aggravated assault, since the jury found him guilty of armed robbery and rejected the lesser included offense of robbery by intimidation, there is no reasonable probability that the outcome of the trial would have been different if counsel had insisted on a charge of theft by taking as a lesser included offense, and the trial court correctly denied a new trial on this basis. See *Sigman*, supra, 287 Ga. at 222 (2).

(ii) With respect to charges which counsel did not request, "[d]ecisions as to which charges will be requested generally fall within the realm of trial tactics and strategy. And strategic decisions provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them." (Citations and punctuation omitted.) *Ingram v. State*, 317 Ga. App. 606, 608 (2) (732 SE2d 456) (2012). Trial counsel testified that he did not request charges of robbery by force, robbery by sudden snatching, terroristic threats, reckless conduct or the defense of claim of right because in his opinion they did not apply to the facts

12

of the case. He testified that he "put everything in that I thought Mr. Bradley and I had a good faith basis for and that the evidence would substantiate." Either these charges were not warranted or not adjusted to the evidence in this case, or Bradley cannot show a reasonable probability that, but for trial counsel's failure to request the charge, the outcome of the trial would have been different.

(b) Bradley next claims that trial counsel "failed to subpoena witnesses and present evidence," but at the hearing on the motion for new trial he presented only one witness, Richard Irvin, that he contended trial counsel should have called. Trial counsel testified that he considered presenting this witness and contacted him, but concluded that Irvin would not have been helpful and that he in counsel's opinion "was negative." On direct examination at the hearing, Irvin denied knowing "anything about Mr. Jones owing Mr. Bradley any money." He only knew what Mr. Bradley had told him, and his testimony was somewhat unclear:

> Q: And what did he tell you?
> A: He told me that he was working for him and he was wanting to get some money from him and he didn't want to let him have it.
> Q. Mr. Jones didn't want to let him have the money?
> A. No. That he had been working for him and what it was all about, I don't know nothing about that."

On cross-examination, Irvin confirmed that he only knew what Bradley had told him and did not know anything about the armed robbery or aggravated assault. Strategic decisions regarding which witnesses to call are the exclusive province of trial counsel. *Taylor v. State*, 318 Ga. App. 115, 117 (2) (a) (733 SE2d 415) (2012).

(c) Finally, Bradley contends counsel was ineffective in failing to file an out-of-time motion to suppress, after he "inherited" the case from another public defender long after the time period for filing a motion to suppress had passed. When claiming ineffectiveness for failure to file a motion to suppress, an appellant "must establish a strong showing that the evidence would have been suppressed had a motion to suppress been filed." (Citation and punctuation omitted.) *Roberts v. State*, 263 Ga. 807, 809 (2) (e) (439 SE2d 911) (1994). Here, the victims identified Bradley by name and told a police officer where he could be found. The officer went to the location and made contact with an individual who identified himself as Bradley. The officer then "Terry frisked his outer person because they advised that he used a pair of scissors as a weapon. So, I was Terry frisking outside of his person to discover any weapons."

> In the context of a second-tier encounter, an officer may conduct a
> pat-down search of a person whom he reasonably believes to be armed

14

or otherwise dangerous to the officer or others. A reasonable search for weapons for the protection of the police officer is permitted where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.

(Citations and punctuation omitted.) *Lewis v. State*, 307 Ga. App. 593, 595 (705 SE2d 693) (2011). It was not, as Bradley argues, an impermissible routine patdown. The officer was investigating the victims' complaint that Bradley had threatened them with a weapon, albeit a somewhat unconventional one. Trial counsel was correct in his conclusion that no basis existed for a motion to suppress. "Failure to pursue a meritless motion cannot be evidence of ineffective assistance." *Banks v. State*, 244 Ga. App. 191, 192 (1) (c) (535 SE2d 22) (2000). This enumeration of error is without merit.

*Judgment affirmed. Doyle, P. J. and McFadden, J., concur.*