**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**August 8, 2013**

# In the Court of Appeals of Georgia

A13A1239. BROOKS v. THE STATE.                                    MI-045C

MILLER, Judge.

Following a jury trial, Xavier Brooks was convicted of armed robbery (OCGA § 16-8-41 (a)).[1] Brooks appeals from the denial of his motion for new trial, contending that the evidence did not support his conviction and that trial counsel was ineffective. For the reasons that follow, we affirm.

> On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict. . . . [W]e neither weigh the evidence nor assess the credibility of witnesses, but merely ascertain that the evidence is sufficient to prove each element of the crime beyond a reasonable doubt. Moreover, conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact

---

[1] Brooks was also charged with two counts of obstruction of an officer (OCGA § 16-10-24 (b)), however, the State nolle prossed these counts.

necessary to make out the [S]tate's case, the jury's verdict will be upheld.

(Punctuation and footnotes omitted.) *Goss v. State*, 305 Ga. App. 497, 497-498 (1) (699 SE2d 819) (2010).

So viewed, the evidence shows that after midnight on July 28, 2009, the victim left work at a club and went to a nearby convenience store. Around the same time, Brooks and two friends, Nathan Murray and Malachi Payne, who had been riding around in Payne's vehicle, stopped at the same convenience store. While the victim was sitting in his parked car, he counted over $100 that he had in his possession. Brooks and Payne stated that they had "to get that," and they then followed the victim's vehicle when the victim left the convenience store.

The victim proceeded to a store to drop off a payment and then to a nearby Taco Bell, where he was followed by Brooks, Payne, and Murray. As Brooks, Payne, and Murray neared the Taco Bell, Payne stopped the vehicle, and the three men pushed it to the side of the restaurant. All three men approached the victim's vehicle, which was in the drive-thru lane, and Payne told the victim that his car would not start, and asked the victim for some jumper cables. The victim informed Payne that he did not have any jumper cables. The victim asked the Taco Bell drive-thru attendant if she had any

2

jumper cables, and she replied that she might and that she would go to her car to look. Although the victim informed Brooks, Murray, and Payne that the Taco Bell employee might have jumper cables, the men asked the victim if he could drive one of them to a store to buy jumper cables.

The victim then drove Brooks to a store. Brooks exited the victim's vehicle and went around the building to the store's entrance. When Brooks returned several minutes later, he told the victim that the store did not have any jumper cables, so the victim drove Brooks back to the Taco Bell where Payne and Murray were waiting. Upon returning to the Taco Bell, Brooks got out of the victim's vehicle. Murray asked the victim if he could drive them home, and the victim agreed. Murray entered the victim's vehicle and sat in the front passenger seat, while Brooks sat in the backseat behind the victim. Murray then took the victim's keys out of the ignition, and Brooks hit the victim on the side of the head. Payne, who had remained outside the victim's vehicle, then opened the driver's side door, pulled the victim out of the vehicle, and began beating the victim. Meanwhile, Brooks and Murray rummaged through the victim's vehicle and took, among other things, the victim's wallet, camera, and cell phone. Payne also took the victim's driver's license and threatened to go to the

3

victim's residence and kill him if he reported the incident to the police. Brooks, Payne, and Murray then left in Payne's vehicle.

The victim then went into the Taco Bell and asked employees to call the police. Police officers received a radio report with the descriptions of Payne's vehicle – a golden-colored sedan – and the perpetrators. About five minutes after the radio report was issued, an officer spotted a car matching the description of the car referenced in the report coming from the direction of the crime scene. The officer pulled behind the vehicle and followed it until it stopped in a driveway. Upon exiting the vehicle, the officer made contact with Payne, Brooks, and Murray and informed them that he was investigating an armed robbery. The victim was brought to the scene, and he positively identified Brooks, Payne, and Murray as his assailants. Police officers then grabbed Murray and Payne to arrest them, and when they attempted to grab Brooks, he broke free and took off running. The officers subsequently recovered the victim's property from Payne's vehicle, the victim's cell phone charger in Murray's pocket, and the victim's car keys in a bag that Brooks had been holding prior to his flight. Additionally, during a search of the victim's vehicle, the officers located a stick on the rear floorboard where Brooks had been sitting when he struck the victim and that the victim stated had not been there before the incident.

4

1. On appeal, Brooks contends that the evidence was insufficient to sustain his conviction for armed robbery. We disagree.

"A person commits the offense of armed robbery when, with intent to commit theft, he . . . takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." OCGA § 16-8-41 (a). Under OCGA § 16-2-20 (a), "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." One is concerned in the commission of a crime if, inter alia, he directly commits the crime or "[i]ntentionally aids or abets in the commission of the crime." OCGA § 16-2-20 (b) (3).

Brooks argues that his conviction cannot be sustained because it was based solely upon the testimony of Murray, his accomplice. The rule that a felony conviction may not be based upon the uncorroborated testimony of an accomplice, however, applies only when the accomplice is the sole witness upon whose testimony the State relies. *Sellers v. State*, 294 Ga. App. 536, 539 (2) (669 SE2d 544) (2008). In this case, in addition to Murray's testimony, the State introduced other evidence, including the victim's testimony, that implicated Brooks. Notably, the victim identified Brooks as the person who hit him on the head just prior to being beaten by Payne, and the victim

5

saw Brooks rummage through his vehicle and take several items. The victim's testimony alone was sufficient to support a finding that Brooks committed armed robbery. See former OCGA § 24-4-8 (2012) ("The testimony of a single witness is generally sufficient to establish a fact.");[2] see also *Reed v. State*, 293 Ga. App. 479, 481 (1) (668 SE2d 1) (2008) (victim's testimony, by itself, was sufficient to sustain conviction for armed robbery). Additionally, the victim's car keys were found in a bag that Brooks had been holding when he was stopped by an officer, and Brooks fled from the officers when they attempted to arrest him. See *Bryson v. State*, 316 Ga. App. 512, 515 (1) (729 SE2d 631) (2012) (a jury may infer a defendant's guilt from evidence of flight). Thus, the evidence here was sufficient to sustain Brooks's conviction for armed robbery. See id. (evidence was sufficient to sustain conviction for armed robbery where defendant matched description given by witnesses, he fled from officers, he drove getaway car, and he was in possession of the victim's property).

2. Brooks also contends that his trial counsel was ineffective for failing to subpoena his girlfriend, her cellular phone records, or Brooks's cellular phone records

---

[2] This provision has been retained but renumbered as OCGA § 24-14-8 in Georgia's new Evidence Code.

6

to show that Brooks spoke at length to his girlfriend during the night in question and, therefore, he was unable to participate in the planning of the armed robbery. We disagree.

> To establish an ineffective assistance of counsel claim, [Brooks] must show that the counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (III) [104 SCt 2052, 80 LEd2d 674] (1984). [Brooks] must show that both prongs of the *Strickland* test are met. Further, a strong presumption exists that the counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Ineffectiveness claims are mixed questions of law and fact. We accept the trial court's findings of fact unless clearly erroneous and apply the law to the facts independently.

(Citation and punctuation omitted.) *Sellers*, supra, 294 Ga. App. at 537 (1).

At the motion for new trial hearing, trial counsel testified that he contacted Brooks's girlfriend and after speaking with her, determined that she would not provide testimony that she had been on the phone with Brooks during the entire of period of time alleged by Brooks. Trial counsel testified that he elected not to call the girlfriend as a trial witness and did not subpoena the phone records because such evidence would have not have supported Brooks's defense.

> It is well established that the decision as to which defense witnesses to call is a matter of trial strategy and tactics; tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors

7

are unreasonable ones no competent attorney would have made under similar circumstances.

(Citations and punctuation omitted.) *Dickens v. State*, 280 Ga. 320, 321 (2) (627 SE2d 587) (2006).

Moreover, at the motion for new trial hearing, Brooks failed to show that his girlfriend's testimony or the subject telephone records would have been relevant and favorable to his defense or that it would have changed the outcome of the trial. The girlfriend did not testify at the new trial hearing and the telephone records were not proffered. When a defendant bases his ineffective assistance of counsel claim on counsel's decision not to call a particular witness, he must introduce either testimony from the uncalled witness or a legally recognized substitute for her testimony. *Manriquez v. State*, 285 Ga. 880, 881 (2) (684 SE2d 650) (2009). "Where, as here, the defendant fails to proffer the testimony of an uncalled witness, he cannot prove that there is a reasonable probability that the trial would have ended differently." (Citations and punctuation omitted.) *Felder v. State*, 286 Ga. App. 271, 278 (5) (a) (648 SE2d 753) (2007). Accordingly, Brooks has failed to show that trial counsel's decision not to call his girlfriend or subpoena the subject telephone records was an unreasonable

trial strategy that constituted deficient performance or that he was prejudiced as a result.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur*.