**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 2, 2015**

# In the Court of Appeals of Georgia

A14A2202. CURTIS v. THE STATE.

MILLER, Judge.

Timothy Dwayne Curtis was tried by a jury and convicted of armed robbery (OCGA § 16-8-41 (a)), aggravated assault with a deadly weapon (OCGA § 16-5-21 (b) (2)), aggravated assault with intent to rob (OCGA § 16-5-21 (b) (1)), and cruelty to animals (OCGA § 16-12-4 (b) (1)). He appeals the trial court's denial of his motion for new trial , contending that his trial counsel was ineffective in numerous respects and that the trial court erred during sentencing by failing to merge one of the aggravated assault counts with the armed robbery count. We find that Curtis did not receive ineffective assistance of counsel. We also find that the offense of aggravated assault with intent to rob was factually merged into the offense of armed robbery. Accordingly, we affirm in part, vacate in part and remand this case for resentencing.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). So viewed, the evidence showed that Curtis was living in Duluth with Quinton Rogers and Stanley Wells. On January 18, 2012, Wells and Rogers got into an argument and a physical altercation ensued. According to Rogers, Wells became aggressive and grabbed Rogers. Curtis and Rogers then decided to leave before things escalated further.

Curtis drove Rogers to an apartment complex in Norcross to obtain some marijuana. When Curtis returned to the car, he brought two men with him, one short and one tall. Rogers testified that, on the way back to his house, there was no discussion of Wells or of guns or violence toward Wells. When Rogers and Curtis returned to the house, they all started arguing again. Wells told Curtis and Rogers that they were going to have to leave. Wells testified that Curtis then called someone on his phone and said, "Y'all ready?" Immediately thereafter, the two men from Norcross came into the house. The shorter man pulled out a gun, pointed it at Wells, told him to get down on the floor, and hit him in the head with the gun when he failed to comply. They then pulled out Wells's pockets, and continued hitting him, taking

his wallet and his cell phone. At some point, Wells heard Curtis say, "Give me that tool," which he assumed meant the gun.

Wells escaped and started running toward the front of the house. The taller man started shooting at him, and Wells grabbed Curtis and used him as a shield. Curtis then ran out the back door, and Wells followed. Wells ran to a neighbor's house for help, and she called 911.

When Duluth City Officer Andrew Brandenburg, responded to the 911 call, he observed pistol imprints on Wells's head. Officer Brandenburg testified that Wells was in shock and said, "I know who did it. It was four guys." Wells was transported to the hospital and treated for lacerations on his head and two gunshot wounds on his leg.

Rogers testified that he was in his bedroom when he heard arguing, and when his bedroom door opened, he saw Wells on the floor with the shorter man standing over him. Rogers also testified that when he climbed out of his bedroom window and began walking to the bus station, he saw flashes coming from the window of the house and heard what sounded like three gunshots.

James Jackson, a neighbor, testified that he was driving past Wells' house and saw flashing lights coming from inside. He saw Wells running out of the house,

3

limping, and then saw two or three other men come out of the house. He saw three or four men get into a car and drive up the street, stopping to pick up another man who was walking.

William Petty, a City of Duluth police officer, testified that he knew Wells and Rogers. Petty responded to the 911 call and observed shattered glass, an overturned chair, blood in the hallway, a bullet casing in the hallway, and a gun magazine in the bathroom. He also found two dogs in a locked bedroom and one of the dogs had what appeared to be a gunshot wound.

After hearing the evidence at trial, the jury issued a verdict of guilty on all four counts of the indictment, Curtis was sentenced to life imprisonment for armed robbery, ten years imprisonment for each count of aggravated assault, and twelve months imprisonment for cruelty to animals. The sentences for aggravated assault and cruelty to animals were to run concurrently with the sentence for armed robbery.

1. Curtis contends that his trial counsel was ineffective for failing to request that opening statements, closing statements, and voir dire be recorded; failing to impeach Wells's testimony with phone records; failing to impeach several of the State's witnesses with their prior felony convictions; and failing to inform the jury of

4

the terms and conditions of Rogers's guilty plea. We find that Curtis has failed to make the requisite showing that his trial counsel provided ineffective assistance.

> To establish an ineffective assistance of counsel claim, [Curtis] must show that the counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984). [Curtis] must show that both prongs of the *Strickland* test are met. Further, a strong presumption exists that the counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Ineffectiveness claims are mixed questions of law and fact. We accept the trial court's findings of fact unless clearly erroneous and apply the law to the facts independently.

(Citation and punctuation omitted.) *Brooks v. State*, 323 Ga. App. 681, 684 (2) (747 SE2d 688) (2013).

(a) Curtis contends that his trial counsel was ineffective for failing to have the opening and closing statements and voir dire transcribed. We disagree.

The arguments of counsel at trial are not required to be transcribed. OCGA § 17-8-5 (a). And "[a]lthough objections and rulings thereon made during jury selection are required to be reported and made part of the trial record, there is no requirement that the entire jury selection be reported and made part of the record in a nondeath penalty felony case." (Citation omitted.) *Brinkley v. State*, 320 Ga. App. 275, 280 (4)

5

(739 SE2d 703) (2013). Accordingly, the failure to request that opening and closing statements and voir dire be reported does not constitute a basis for an ineffective assistance of counsel claim. See *Williams v. State*, 323 Ga. App. 88, 90 (2) (c) (746 SE2d 913) (2013); see also *Dunlap v. State*, 291 Ga. 51, 53 (3) (727 SE2d 468) (2012) (defendant's speculation that error may have occurred during unrecorded opening or closing statements or voir dire "is insufficient to show any deficiency on the part of counsel, or prejudice therefore, and is insufficient to show reversible error.") (citations omitted).

(b) Curtis contends that his trial counsel was ineffective for failing to subpoena the necessary witnesses to authenticate the phone records for Wells and Curtis, which could have been used to impeach Wells's testimony about phone calls he claimed were made from him to Curtis and from Curtis to one of the men who assaulted him. We disagree.

The day after the incident, Officer Petty interviewed Wells, and Wells told him that he called Curtis before the attack and that Curtis also called the men who attacked him. In an attempt to verify those calls, Officer Petty subpoenaed Wells's and Curtis's cellular phone records. The records were not introduced at trial and when Curtis's counsel sought testimony from Officer Petty about whether the records

6

showed that the calls Wells testified about had actually been made, the trial court sustained the State's objection based on lack of foundation.

Even if Curtis's trial counsel was deficient for failing to subpoena witnesses to authenticate the phone records, Curtis has failed to show prejudice.

> To prove the prejudice prong of *Strickland* on a claim that trial counsel failed to call a witness, a defendant must show the witness's expected testimony by presenting either live testimony of the witness, an affidavit from the witness, or a legally recognized substitute for the uncalled witness's testimony; a proffer by counsel is insufficient.

(Citations and punctuation omitted.) *Benjamin v. State*, 322 Ga. App. 8, 11 (1) (b) (743 SE2d 566) (2013). At the motion for new trial hearing, the phone records were not proffered and the witnesses that Curtis claims should have been called at trial did not testify or provide a legally recognized substitute for such testimony. "Where, as here, the defendant fails to proffer the testimony of an uncalled witness, he cannot prove that there is a reasonable probability that the trial would have ended differently." (Citations and punctuation omitted.) *Brooks*, supra, 323 Ga. App. at 684-685 (2).

Curtis also contends that his trial counsel was ineffective in failing to make Wells admit to an inconsistency between Petty's testimony about his interview with

7

Wells and Wells's trial testimony. According to Officer Petty, Wells said that Rogers had head-butted him during the initial argument about the power bill. Wells testified that he did not say that, but told Officer Petty that "[Rogers's] mouth touched my mouth, face to face." Trial counsel made the jury aware of this inconsistency, and Curtis has not shown a reasonable probability that the outcome of his trial would have been different if Wells had admitted the inconsistency.

(c) Curtis contends that his trial counsel was ineffective for failing to impeach Rogers, Jackson and another witness, Carlyon John Price, with their prior felony convictions and for failing to request a jury charge on impeachment by prior felony conviction. We disagree.

(i) At the motion for new trial hearing, Curtis introduced copies of prior convictions for felony offenses obtained as a result of negotiated guilty pleas for Rogers (sale of cocaine), witness Price (escape, two convictions for possession of cocaine), and Jackson (three convictions for theft by taking). Trial counsel testified that she did not think it was necessary to introduce Rogers's prior drug conviction as it was obvious that the people who testified in the case were involved in drugs somehow. Trial counsel was aware that Price and Jackson might have criminal

8

histories, but did not obtain any prior convictions for them because she did not think they would make a difference in the case.

(a) Rogers's Testimony

"The decision whether to impeach a witness through introduction of certified copies of prior convictions is a matter of trial strategy." (Citation and punctuation omitted.) *Chance v. State*, 291 Ga. 241, 246 (7) (a) (728 SE2d 635) (2012). Despite the fact that he was a witness for the State, most of Rogers's testimony was favorable to Curtis insofar as it showed that Wells instigated the initial conflict and that there was no discussion of any plan to attack Wells before he and Curtis returned to the house with the other men. Thus, it is not clear what benefit Curtis would have obtained by impeaching Rogers with a prior drug conviction. Further, the jury was aware that Rogers used illegal drugs based on his own testimony at trial. As a result, any deficiency in failing to impeach Rogers's testimony with his prior felony conviction could not have prejudiced Curtis as it would not have made a significant difference in the jury's assessment of his credibility. See *Aburto v. State*, 327 Ga. App. 424, 430 (3) (b) (759 SE2d 276) (2014); *Buchanan v. State*, 273 Ga. App. 174, 181-182 (5) (614 SE2d 786) (2005).

(b) Price's Testimony

Price's testimony was limited to proof that Wells asked him to clean the house after the incident and that, while cleaning, he found a roll of duct tape in the back yard. Both Wells and Curtis testified that the two men used tape to try and wrap Wells's legs. Even if Price's prior convictions had been admitted and the jury had disregarded all or some part of his testimony, the remaining evidence was sufficient to authorize the jury's verdict. Accordingly, no reasonable probability exists that, but for trial counsel's failure to impeach Price with his prior convictions, the result of the trial would have been any different. See *Chance*, supra, 291 Ga. at 247 (7) (a).

(c) Jackson's testimony

With respect to Jackson's convictions for theft by taking, his trial testimony was relevant to show that gunshots were fired inside the house. Rogers, however, also testified that he saw flashes of light coming from the house and there is no dispute that Wells was shot inside the house. Jackson also testified that he saw two or three men come out of the house and three or four men get into a car and drive up the street. Even if Jackson's prior convictions had been admitted and the jury had disregarded all or some part of his testimony, the remaining evidence was sufficient to authorize the jury's verdict. Curtis has therefore failed to show a reasonable probability that the

outcome of his trial would have been different if Jackson had been impeached with his prior convictions. See *Chance*, supra, 291 Ga. at 247 (7) (a).

(ii) Curtis also claims that his trial counsel was ineffective for failing to request a charge on impeachment by prior felony conviction.

> When a claim of ineffective assistance is based on the failure to request a jury charge, the relevant inquiry is whether the charge, if it had been requested, was warranted by the evidence, and if it had been given, whether there is a reasonable probability that it would have changed the outcome of the trial.

(Citation omitted.) *Bradley v. State*, 322 Ga. App. 541, 545 (3) (a) (745 SE2d 763) (2013). Because there was no impeachment by use of a prior felony conviction, Curtis would not have been entitled to an instruction on that basis and trial counsel was not deficient in failing to request it. See generally id. at 547 (3) (a) (i).

(d) Curtis contends that his trial counsel was ineffective for failing to fully inform the jury of the terms and conditions of Rogers's plea deal in order to show Rogers's bias. We disagree.

"Although an attorney is permitted to thoroughly question a testifying co-defendant regarding the details of any plea agreement, it does not necessarily follow that counsel is ineffective for failing to elicit all details of the agreement."

11

*Serrate v. State*, 268 Ga. App. 276, 278 (2) (c) (601 SE2d 766) (2004). At trial, Rogers wore jail clothing and testified that he was facing the same charges as Curtis and was waiting on sentencing pursuant to his guilty plea. Rogers acknowledged that he was testifying for the State, that he took a plea instead of going to trial, and that he expected a lighter sentence based on the testimony he gave at Curtis's trial. Thus, the jury was provided with evidence that Rogers was potentially biased and had motivation to testify against Curtis.[1] Under the facts of this case, we cannot say that trial counsel's failure to ask about specific aspects of Rogers's plea deal was patently unreasonable. See *Holder v. State*, 319 Ga. App. 239, 249 (3) (b) (736 SE2d 449) (2012).

2. Curtis contends that the trial court erred during sentencing by failing to merge Count 3 (aggravated assault with intent to rob) with Count 1 (armed robbery). We agree.

A defendant may not be convicted of more than one crime based on the same conduct if one crime is included in the other. OCGA § 16-1-7 (a) (1). To determine

---

[1] At the motion for new trial hearing, trial counsel testified that she went over the fact that Rogers was getting a deal because he was coming to testify against her client and felt as though she had sufficiently covered the topic at trial even though she did not specifically mention the sentence Rogers could have faced if not for his plea deal.

whether the conviction for aggravated assault with intent to rob merges into the conviction for armed robbery, we apply the "required evidence" test, which provides "that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (Punctuation and footnote omitted.) *Drinkard v. Walker*, 281 Ga. 211, 215 (636 SE2d 530) (2006). Armed robbery requires an intent to rob, use of an offensive weapon, and the taking of property from another person or that person's immediate presence. OCGA § 16-8-41 (a). Aggravated assault with intent to rob requires an assault upon a person with an intent to rob. OCGA § 16-5-21 (b) (1). Curtis was charged with armed robbery for taking Wells's wallet by use of a handgun and aggravated assault for hitting Wells in the head with a gun with the intent to rob. Because "the 'assault' element of aggravated assault with intent to rob is contained within the 'use of an offensive weapon' element of armed robbery and both crimes share the 'intent to rob' element, there is no element of aggravated assault with intent to rob that is not contained in armed robbery." *Lucky v. State*, 286 Ga. 478, 482 (2) (689 SE2d 825) (2010).

The State argues that the time lapse between the beating with the gun and the robbery precludes the counts from merging. See *Gaither v. Cannida*, 258 Ga. 557, 557-558 (1) (372 SE2d 429) (1988) (where facts show one crime was completed before the second crime so that crimes are separate as a matter of law, there is no merger). At trial, however, Wells testified that he was still being pistol whipped while the men asked him,"what you got," and took his wallet and cell phone The robbery by use of a handgun was completed at the same place and approximately the same time as the aggravated assault with a handgun. See *Herrera v. State*, 306 Ga. App. 432, 435 (3) (702 SE2d 731) (2010). Thus, the timing of the offenses does not preclude their merger. Because the aggravated assault with intent to rob was established by proof of the same or less than all the facts required to prove armed robbery, the offenses merge. See id. Accordingly, we vacate the conviction and sentence for aggravated assault with intent to rob and remand the case for resentencing with direction to merge the aggravated assault with intent to rob into the armed robbery count.

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. Doyle, P. J., and Dillard, J., concur.*

14