**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 18, 2015**

# In the Court of Appeals of Georgia

A15A1239. PASCHAL v. THE STATE.

MILLER, Judge.

Following a jury trial, Edward Paschal was convicted of armed robbery (OCGA § 16-8-41 (a)), two counts of aggravated assault (OCGA § 16-5-21 (a) (2) (2009)), burglary (OCGA § 16-7-1 (a) (2009)), two counts of false imprisonment (OCGA § 16-5-41 (a)) and two firearms offenses (OCGA § 16-11-106 and OCGA § 16-11-131 (b) (2009)) for crimes arising out of a home invasion. Paschal appeals from the denial of his motion for new trial, contending that (1) the trial court erred in admitting his 1989 convictions for armed robbery and aggravated assault as other acts evidence under OCGA § 24-4-404 (b);[1] (2) the trial court erred in instructing the jury on the

---

[1] See *State v. Jones*, 297 Ga. 156, 158 (1), n.1 (773 SE2d 170) (2015) (adopting the Eleventh Circuit's terminology and using the term "other acts" in reference to OCGA § 24-4-404 (b).

use of other acts evidence; and (3) trial counsel was ineffective in failing to object to the trial court's jury instruction. After a thorough review of the all the issues raised, we disagree with those contentions. For the reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the evidence shows that, in 2009, Paschal's friend, Jacob, decided to rob T. J. Jacob and T. J. had sold drugs together, but they had a falling out. Jacob recruited Paschal to help with the robbery and they agreed to split the expected proceeds.

On Friday, March 20, Paschal and Jacob drove over to T. J.'s house on Haney Road in Coweta County in Paschal's truck and watched the house for three to four hours. On March 21, 2009, Paschal went to Party City and bought "Curly" and "Moe" masks based on the characters from "The Three Stooges." After buying the masks, Paschal and Jacob met at Jacob's apartment.

Around 9:00 p.m. that night, Paschal and Jacob left the apartment in Paschal's truck and drove toward T. J.'s house. Paschal was wearing a blue bandana on his face and carrying a gun. Jacob, who was driving, also had a gun. Jacob dropped off Paschal near T. J.'s house, drove into the woods where he watched the house for

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

about 90 minutes, and then parked Paschal's truck on J. W. Thompson Road. Around 11:00 p.m., while he was walking toward T. J.'s house, Jacob saw T. J. driving away.

Jacob, who was wearing a black hoodie and one of the masks, met back up with Paschal near T. J.'s house, and they entered the house through the unlocked front door. A few minutes later, Paschal and Jacob heard T. J. pull up so they waited inside the front door. When T. J. entered the house, Jacob pointed a pistol at him and moved toward him.

T. J. and Jacob started slamming each other back and forth in the kitchen until they fell on the floor. Jacob ended up on top of T. J. and held his gun to the back of T. J.'s neck. At one point Jacob's mask got pulled down and T. J. could see his face. Jacob hit T. J. in the back of the head with the butt of a gun, and then he put T. J. in a choke hold. T. J.'s mother then came into the kitchen and hit Jacob in the head with a lamp. Paschal grabbed the mother from behind and hit her in the head with his gun, knocking her to the floor and causing significant injuries.

Jacob and Paschal then zip-tied the victims' hands and feet, carried T. J. upstairs and demanded money from him. T. J. gave Paschal several thousand dollars in cash. Paschal and Jacob then dragged T. J. back downstairs and demanded that T. J. give them his car keys because they believed that T. J. had more money hidden

3

outside and they planned to drive T. J. and his mother into the woods behind T. J.'s house.

Jacob set T. J. down by the front door and went to help Paschal, who was having trouble getting the mother off the floor. Meanwhile, T. J., who believed that he was going to be killed, got up and ran out the side door to his neighbor's house, where the neighbor called 911.

When T. J. ran to the neighbor's house, Paschal and Jacob chased him for approximately 40 yards and then took off running in different directions. Paschal hid in the woods for a day and a half after the home invasion. The next day, when Paschal left the area where he was hiding, he encountered a sheriff's deputy. Paschal gave the deputy a false name and refused to take his hands out of his pockets. When the deputy took a step towards him, Paschal took off running so he could get rid of the gun used in the home invasion. The deputy and another officer chased Paschal and arrested him for loitering, prowling and obstructing an officer.

On the night of the crimes, after Paschal and Jacob stopped chasing T. J., Jacob ran up Haney Road, which connects with J. W. Thompson Road near a bridge, and he continued running until he reached a fallen tree. Jacob hid under the tree for several hours and left his Party City Mask there.

4

On the night of the crimes, T. J. identified Jacob as one of the robbers, and, a few weeks later, T. J. found the mask Jacob wore by the tree. An investigating officer also found the plastic ties used on T. J. just outside the door where T. J. exited the house when he ran to his neighbor's, and he found a dark colored bandana on the side of Haney Road right near the area where Paschal and Jacob initially ran.

Investigators subsequently searched Jacob's apartment where they found the tags for the "Curly" and "Moe" masks as well as the Party City receipt showing that the masks were purchased on March 21, 2009. The manager of Party City positively identified Paschal in a photo-lineup as the man who came into the store to purchase the masks. Paschal was then charged with the crimes in this case.

1. Paschal contends that the trial court erred in admitting his 1989 convictions for armed robbery and aggravated assault for the limited purpose of showing his course of conduct. "A trial court's decision to admit other acts evidence will be overturned only where there is a clear abuse of discretion." (Citations omitted.) *State v. Jones*, 297 Ga. 156, 159 (1) (773 SE2d 170) (2015). As set forth herein, we hold that the trial court abused its discretion in admitting evidence of Paschal's 1989 convictions because evidence of other acts is no longer admissible for the purpose of showing a defendant's course of conduct.

Since this case was tried after January 1, 2013, Georgia's new Evidence Code applies. See *Bradshaw v. State*, 296 Ga. 650, 655 (3) (769 SE2d 892) (2015). While Georgia courts routinely admitted similar transaction evidence and other acts for purposes of showing course of conduct under the old Evidence Code,[3] the Legislature, in enacting the new Evidence Code, has removed "course of conduct" as one of the listed purpose for which other acts may be admitted. See OCGA § 24-4-404 (b). Specifically, OCGA § 24-4-404 (b) of the new Evidence Code provides:

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

We note that Rule 404 (b) is a rule of inclusion that contains a non-exhaustive list of purposes for which other acts may be admitted, other than to prove character. See *State v. Frost*, 297 Ga. 296, 300 (773 SE2d 700) (2015). Nevertheless, where, as here, a statute is amended to delete words, we presume that the Legislature intended to make some change to the existing law. See *Fredrick v. State*, 181 Ga. App. 600,

---

[3] See *Wright v. State*, 296 Ga. 276, 279 (1) (766 SE2d 439) (2014); *Matthews v. State*, 294 Ga. 50, 52 (3) (a), n.2 (751 SE2d 78) (2013).

601 (1) (353 SE2d 41) (1987); see also *State v. Johnson*, 292 Ga. 409, 412 (738 SE2d 86) (2013) ("The General Assembly is presumed to enact all statutes with full knowledge of the existing condition of the law and with reference to it.") (citation and punctuation omitted). Furthermore, under the rules of statutory construction, this Court cannot deem that the omitted words are redundant or meaningless surplusage. See *Transportation Ins. Co. v. El Chico Restaurants*, 271 Ga. 774, 776 (524 SE2d 486) (1999).

Since other acts evidence was admissible to show course of conduct under the old Evidence Code and the Legislature omitted course of conduct in enacting OCGA § 24-4-404 (b), we "discern that the absence of such language was a matter of considered choice." (Punctuation and footnote omitted.) *Gordon v. State*, 316 Ga. App. 42, 46 (1) (a) (728 SE2d 720) (2012). Consequently, we hold that course of conduct is no longer a viable exception with regard to the admissibility of other acts under the new Evidence Code and the trial court abused its discretion in admitting Paschal's 1989 convictions for that purpose.[4] Nevertheless, we need not reverse

---

[4] The State proffered and the trial court admitted Paschal's 1989 convictions only for the purpose of showing course of conduct. We do not consider on appeal whether those convictions might have been admissible for other purposes such as to show proof of motive, opportunity or intent. See *Kress v. State*, 195 Ga. App. 519 (2) (394 SE2d 139) (1990) (this Court will not consider issues on appeal which were not

Paschal's convictions, because the trial court's error in admitting Paschal's 1989 convictions was harmless, given the overwhelming evidence of his guilt.

Notably, Jacob and Paschal planned and committed the home invasion together; Paschal owned the truck used in the crimes; Paschal purchased the Party City mask that Jacob wore during the home invasion; Paschal hid in the woods near T. J.'s house on the night of the crimes; a Deputy discovered Pascal the very next day near the woods, a short distance from T. J.'s house; and Pascal gave the deputy a false name, refused to take his hands out of his pockets and then ran from the deputy so that he could get rid of the gun used in the home invasion. See *Barstad v. State*, 329 Ga. App. 214, 217 (1) (764 SE2d 453) (2014) (defendant's flight is circumstantial evidence of his guilt). In light of this overwhelming evidence, it is highly probable that the evidence of Paschal's 1989 convictions did not contribute to the jury's verdict. See *Jackson v. State*, 281 Ga. 705, 706 (2) (642 SE2d 656) (2007) (admission of other acts evidence was harmless, given overwhelming evidence of defendant's guilt); *Bright v. State*, 314 Ga. App. 589, 594 (1) (b) (725 SE2d 327) (2012) (highly unlikely that admission of other acts evidence contributed to verdict where there was strong evidence of defendant's guilt).

raised in and ruled upon by the trial court).

8

2. Paschal also contends that the trial court reversibly erred in charging the jury that his 1989 convictions were admissible to show his course of conduct, and in sua sponte instructing the jury that it could consider evidence of his 1989 convictions to show his modus operandi. We do not agree.

Here, before the State presented this evidence, the trial court gave the jurors a limiting instruction in which the trial court prohibited them from considering the 1989 convictions for any purpose other than course of conduct and modus operandi and instructed them that they could not infer from evidence of those convictions that Paschal "[was] of a character that [he] would commit such crimes." In its final jury instructions, the trial court repeated these same admonitions. Paschal failed to object to either of these limiting instructions. Accordingly, this Court will only review the charge for plain error. See *Allen v. State*, 290 Ga. 743, 744-745 (3) (723 SE2d 684) (2012).

> The plain error test . . . authorizes reversal of a conviction if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity or public reputation of judicial proceedings.

(Citations and punctuation omitted.) *Smith v. State*, 292 Ga. 316, 319 (3) (737 SE2d 677) (2013).

9

Given the overwhelming evidence in this case, Paschal cannot show that the trial court's charge on the jury's consideration of his 1989 convictions likely affected the outcome of the proceedings. See *Rouen v. State*, 312 Ga. App. 8, 10 (2) (717 SE2d 519) (2011). Moreover, the trial court's charge as given and when considered as a whole properly set forth the elements of the charged crimes, instructed the jury on the State's burden of proof and burden to show intent, and instructed the jury that only slight evidence from another source was necessary to support Jacob's testimony. See id. at 10-11. Accordingly, Paschal has not shown reversible error.

3. Paschal contends that his trial counsel was deficient for failing to object to the trial court's limiting instructions regarding the admission of evidence of his 1989 convictions. We disagree.

> To establish an ineffective assistance of counsel claim, [Paschal] must show that the counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668, 687 (III) [(104 SCt 2052, 80 LE2d 674)] (1984). [Paschal] must show that both prongs of the *Strickland* test are met. Further, a strong presumption exists that the counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Ineffectiveness claims are mixed questions of law and fact. We accept the trial court's findings of fact unless clearly erroneous and apply the law to the facts independently.

(Citation and punctuation omitted.) *Brooks v. State*, 323 Ga. App. 681, 684 (2) (747 SE2d 688) (2013).

Here, defense counsel objected to the admission of Paschal's 1989 convictions, but did not object to the trial court's limiting instructions on this other acts evidence. Trial counsel stated that his strategy with regard to Paschal's 1989 convictions was to focus on the dissimilarities and the 20-year time gap between the 1989 crimes and the crimes in this case. Matters of trial strategy do not support a claim of ineffective assistance. See *Littlejohn v. State*, 320 Ga. App. 197, 207 (5) (a) (ii) (739 SE2d 682) (2013). Moreover, in light of the overwhelming evidence, Paschal cannot show prejudice. See *Ellicott v. State*, 320 Ga. App. 729, 739 (6) (740 SE2d 716) (2013). Accordingly, under the circumstances in this case, Paschal has not shown that his trial counsel rendered ineffective assistance.

*Judgment affirmed. Andrews, P. J., and Branch, J., concur*.