**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 3, 2021**

# In the Court of Appeals of Georgia

A20A2108. JEFFERSON v. THE STATE.

BARNES, Presiding Judge.

A jury found Orlando Jefferson guilty of family violence aggravated assault and family violence battery, and the trial court denied his motion for new trial. On appeal, Jefferson contends that the trial court erred by not sufficiently examining whether the victim was mentally competent to testify as a witness at trial. He further contends that the trial court erred by granting the State's petition to give the victim immunity from prosecution and to require her to testify as a witness for the State. Additionally, Jefferson argues that his trial counsel rendered ineffective assistance. For the reasons discussed more fully below, we affirm.

On appeal from a criminal conviction, the appellant is no longer presumed innocent, and we view the evidence in the light most favorable to the jury verdict.

*Batten v. State*, 295 Ga. 442, 443 (761 SE2d 70) (2014). So viewed, the evidence showed that Jefferson and the victim married in May 2016, and Jefferson moved into the victim's apartment in DeKalb County. After they married, Jefferson and the victim began abusing illegal narcotics and alcohol. Jefferson would become paranoid, sexual, and irritable when he took drugs. Their relationship became increasingly strained as they would stay up for days at a time, and a few months into their marriage, Jefferson became physically violent toward the victim. Jefferson got angry with the victim when she did not leave him enough marijuana, and he repeatedly slapped her in the face until her eye became red and her face was swollen. She called the police, and Jefferson was arrested. Jefferson continued to physically abuse the victim after that initial incident, but the victim did not always call the police.

The incidents forming the bases for the indictment in this case occurred over a three-day period from Thursday, June 8, 2017 to Saturday, June 10, 2017. On Thursday, Jefferson became angry with the victim, and he grabbed her around the neck with both hands, held her down on the floor with his knees on her chest, and strangled her, causing her to be unable to breath. Jefferson stopped strangling the victim, but he then hit her in the left eye, pulled her hair, and kicked her in the stomach. The attack caused the victim to suffer a black eye, a busted lip, a cut behind

her ear, red marks on her neck, and bruising on her chest, neck, and thigh. The victim did not call the police after the attack because Jefferson had taken her phone that day.

On Friday, Jefferson convinced the victim to go to work with him and to wait for him in the car. After Jefferson's shift ended and he and the victim returned to their apartment, they began using drugs, and Jefferson became angry with the victim and accused her of sleeping with a neighbor. Jefferson lunged toward the victim on the couch and "chopped" her on the throat with his hand, leaving a red mark. The victim did not call the police because she hoped that Jefferson would calm down. Later that night, Jefferson barricaded the door to the apartment with trash cans so that the victim could not leave without him hearing her.

On Saturday, the victim refused to go to work again with Jefferson. While Jefferson was in the bathroom, the victim retrieved a gun hidden under their bed and fled into nearby woods. The victim called 911 on her cell phone, and she returned to the apartment once she saw Jefferson drive away from the apartment complex. A police officer responded to the scene and observed the victim's injuries. The officer drove the victim to police headquarters, where a detective spoke with her and took photographs of her injuries. The victim also emailed the detective pictures of her injuries that Jefferson had caused.

In a subsequent encounter around Mother's Day in 2018, Jefferson became angry with the victim and punched her in the face, causing her cheek and eye to swell. Then, in July 2018, Jefferson threatened to hit the victim so hard in the eye that she would go blind, said that he wanted to kill her, and told her that he had been thinking about ways to do the killing. When Jefferson then ran up to the victim, she shot him twice. The victim called the police and explained what had happened. She was initially charged for shooting Jefferson but the charges were later dismissed.

Five indictments were returned against Jefferson based on his violent encounters with the victim.[1] Jefferson ultimately was tried in the present case solely on the indictment for the June 2017 incidents. In that indictment, he was charged with family violence aggravated assault for strangling the victim and with family violence battery for intentionally causing visible bodily harm to the victim in the form of redness and bruising as a result of pushing, punching, and kicking her.

At trial, the victim invoked her right against self-incrimination when questioned by the State about her encounters with Jefferson. The State asked the trial court to grant the victim "use immunity" from prosecution under OCGA § 24-5-507

---

[1] One of the indictments against Jefferson was placed on the dead docket before the trial in this case.

4

and to order her to testify. The trial court granted the State's request over Jefferson's objection, and the victim then testified about her violent encounters with Jefferson as described above.

During her testimony, the victim also explained that she suffered from bipolar disorder and received disability benefits from the military, but that she took medication so that she could live a normal life. The victim testified that she took Prozac for her depression and anxiety and Seroquel for her agitation and to help her sleep. The victim denied experiencing paranoia, hearing voices, or having psychotic episodes.

Also during her testimony, the victim testified that she did not want to testify against Jefferson and did not want him to go to jail, but she had been told by the State that she would be arrested if she did not appear at court because she was under subpoena. The victim also testified that she was undergoing chemotherapy for breast cancer and felt sick to her stomach, but did not want to risk going to jail for not appearing at court and then missing her next chemotherapy appointment. However, the victim testified that she realized she was under oath and "had to tell the truth" regardless of whether she wanted to testify against Jefferson.

In addition to the victim's testimony, the State introduced photographs of the victim's injuries from the June 2017 incidents and, among other witnesses, called the responding officer who observed those injuries. The State introduced into evidence and played for the jury portions of the victim's 911 call. After the State rested, Jefferson elected not to testify and did not call any witnesses.

The jury found Jefferson guilty of the two charged offenses. Jefferson filed a motion for new trial, as amended, which included claims that his trial counsel rendered ineffective assistance. After conducting a hearing where Jefferson's trial counsel testified, the trial court denied the motion for new trial, resulting in this appeal.

1. Jefferson argues that the trial court erred by not conducting a sufficient examination into whether the victim was competent to testify as a witness under OCGA § 24-6-601 ("Rule 601") of Georgia's current Evidence Code. According to Jefferson, the victim's diagnosis of bipolar disorder, drug abuse, cancer treatment, and certain comments she made during her trial testimony reflected that she was incapable of testifying in a competent fashion.

As an initial matter, Jefferson did not object to the admission of the victim's testimony on the ground that she was incompetent to testify under Rule 601. Under

6

the current Evidence Code, "where a party fails to object to an evidentiary ruling at trial, we review such rulings for plain error." *State v. Parks*, 350 Ga. App. 799, 807 (830 SE2d 284) (2019). See OCGA § 24-1-103 (d) ("Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court.").[2] And, as explained below, the trial court did not commit any error, much less plain error, by allowing the victim to testify in this case.

Rule 601 provides: "Except as otherwise provided in [Title 24, Chapter 6], every person is competent to be a witness." Embodied in Rule 601 is the presumption

---

[2] Plain-error review consists of four components:
First, there must be an error or defect–some sort of deviation from a legal rule–that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the defendant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the defendant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error–discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Thus, beyond showing a clear or obvious error, plain-error analysis requires the defendant to make an affirmative showing that the error probably did affect the outcome below.
(Citations and punctuation omitted.) *Parks*, 350 Ga. App. at 808. See *Gates v. State*, 298 Ga. 324, 327 (3) (781 SE2d 772) (2016).

that witnesses are competent to testify. See *United States v. Devin*, 918 F2d 280, 291-292 (IV) (D) (1st Cir.1990) ("It is a well-established principle, embodied in Fed. R. Evid. 601, that witnesses are presumed competent to testify."); *United States v. Khoury*, 901 F2d 948, 966 (VII) (11th Cir. 1990) ("[T]he Federal Rules of Evidence provide an initial presumption of competence.").[3] And there is nothing in the record that would rebut that presumption in this case. While Jefferson notes that the victim had been diagnosed with bipolar disorder, the victim testified that she took medication to control her condition. In any event, suffering from a mental health condition is not one of the statutory exceptions to Rule 601.[4] Indeed, "Rule 601

---

[3] As our Supreme Court has explained, "Many provisions of the new Evidence Code were borrowed from the Federal Rules of Evidence, and when we consider the meaning of these provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit." *Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016). In the context of criminal cases, Georgia's Rule 601 is materially identical to Federal Rule of Evidence 601 ("FRE 601"), which provides in pertinent part that "[e]very person is competent to be a witness unless these rules provide otherwise."

[4] Rule 601 abolishes any competency requirements other than those found in other provisions of Title 24, Chapter 6. See OCGA § 24-6-601. In this regard, OCGA § 24-6-602 requires that a witness have personal knowledge of matters to which he or she testifies; § 24-6-603 (a) requires that an adult witness declare that he or she will testify truthfully by an oath or affirmation; § 24-6-605 addresses the disqualification of judges as witnesses; and § 24-6-606 addresses the disqualification of jurors as witnesses.

8

allows one not mentally competent to testify, and it assumes that jurors are capable of evaluating a witness's testimony in light of the fact that [s]he is not mentally competent." *United States v. Gates*, 10 F3d 765, 766 (I) (11th Cir. 1993) (construing FRE 601). See *Andrews v. Neer*, 253 F3d 1052, 1062-1063 (IV) (8th Cir. 2001) (witness's "status as an involuntarily committed schizophrenic . . . [did] not ipso facto render him incompetent to testify in federal district court" under FRE 601); *United States v. Roach*, 590 F2d 181, 186 (V) (5th Cir. 1979) (quoting Advisory Committee Note to FRE 601 for proposition that questions of mental capacity are "particularly suited to the jury as one of weight and credibility"). Hence, the fact that the victim had been diagnosed with bipolar disorder, standing alone, did not require the exclusion of her testimony, but rather was a matter that the jury could consider in weighing her testimony and assessing her credibility.

Furthermore, despite Jefferson's suggestion on appeal, the record reflects that the victim was able to coherently describe the incidents leading to the charged crimes based on her personal knowledge of those matters and was responsive to the questions asked to her. Likewise, the record is devoid of any evidence reflecting that her history of drug and alcohol abuse or her chemotherapy treatment for her cancer affected her competency to testify in any manner whatsoever. See *United States v.*

9

*Jackson*, 576 F2d 46, 48 (5th Cir. 1978) (narcotics use goes to witness's credibility, not his or her competency to testify under FRE 601). Nor is there any allegation that the victim failed to understand the nature of the oath administered to her.

Under these circumstances, the trial court committed no error, plain or otherwise, in allowing the victim to testify at trial. See, e.g., *United States v. Skorniak*, 59 F3d 750, 755 (II) (B) (8th Cir. 1995) (witness who had previously been hospitalized for mental health problems and who had a history of drug and alcohol abuse was competent to testify under FRE 601; those issues went to the witness's credibility, not his competency to testify); *United States v. Peyro*, 786 F2d 826, 830-831 (III) (8th Cir. 1986) (district court did not err in finding that witness with memory problems and who was "emotionally unbalanced" was competent to testify under FRE 601); *United States v. Gutman*, 725 F2d 417, 420 (7th Cir. 1984) (district court authorized to conclude that witness who "had bouts of serious mental illness in the

year before trial" was competent to testify under FRE 601).[5] Jefferson thus has failed to show any basis for a new trial on the asserted ground.

2. Jefferson contends that the trial court erred by granting, over a defense objection, the State's request for the victim to be given "use immunity" from prosecution under OCGA § 24-5-507 and be required to testify at trial. According to Jefferson, the immunity granted to the victim was defective such that her Fifth Amendment right against self-incrimination was violated. Jefferson also contends that the victim's Sixth Amendment right to counsel was violated because she was not advised to consult counsel about the scope of her "use immunity."

> Generally speaking, and particularly outside the First Amendment context, a criminal defendant will not be heard to complain of the violation of another person's constitutional rights. And Georgia courts have specifically held that a criminal defendant has no right to raise

---

[5] We also note that a trial court generally has no duty to sua sponte conduct a witness competency hearing. See *United States v. Kelly*, 436 F3d 992, 996 (II) (C) (8th Cir. 2006) (construing FRE 601). See also *Gates*, 10 F3d at 767 (I) (trial court committed no error by "not granting an examination and in not conducting a hearing on the issue of competency" of witness who had previously been hospitalized in mental health institution); *Khoury*, 901 F2d at 966 (VII) (trial court did not err in failing to order psychiatric examination of witness to determine his competency). And Jefferson has pointed to nothing in the record that would have required such a hearing in this case.

11

alleged violations of another individual's right against self-incrimination[.]

(Citations and punctuation omitted.) *Romer v. State*, 293 Ga. 339, 342 (2) (745 SE2d 637) (2013). Likewise, a criminal defendant has no right to raise a claim that another person's Sixth Amendment right to counsel was violated because "the rights guaranteed by the Sixth Amendment are personal." *Graham v. State*, 171 Ga. App. 242, 246 (3) (319 SE2d 484) (1984). Jefferson therefore lacks standing to challenge any alleged violation of the victim's Fifth Amendment right against self-incrimination or her Sixth Amendment right to counsel. See *Wilson v. State*, 286 Ga. 141, 142 (2) (686 SE2d 104) (2009) (concluding that "a criminal defendant lacks standing to assert another's privilege against self-incrimination" because "[t]he privilege against self-incrimination is that of the person under examination as a witness and is intended for his protection only") (citations and punctuation omitted); *Lawton v. State*, 259 Ga. 855, 856 (2) (388 SE2d 691) (1990) (defendant could not challenge trial court's rulings granting a witness immunity from prosecution and requiring the witness to testify at trial because defendant lacked standing to assert the witness's privilege against self-incrimination); *Graham*, 171 Ga. App. at 246 (3) (defendants had no

standing to argue that their co-defendant's Sixth Amendment right to counsel had been violated).

3. Jefferson argues that he received ineffective assistance from his trial counsel. To establish a claim of ineffective assistance of counsel under the test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984), Jefferson

> must prove both that his counsel's performance was constitutionally deficient and that the deficiency resulted in prejudice to his case. To establish deficient performance, [Jefferson] must demonstrate that his trial counsel's acts or omissions were objectively unreasonable, considering all the circumstances at the time and in the light of prevailing professional norms. To meet the prejudice prong of *Strickland*, [Jefferson] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This Court need not address both components of the inquiry if the defendant makes an insufficient showing on one.

(Citations and punctuation omitted.) *Stepp-McCommons v. State*, __ Ga. __ (4) (845 SE2d 643) (2020). Guided by the *Strickland* standard, we turn to Jefferson's specific claims of ineffective assistance.

13

(a) Jefferson first maintains that his trial counsel was ineffective in failing to move to exclude the testimony of the victim on the ground that she was incompetent under Rule 601. For the reasons discussed supra in Division 1, such a motion would not have been successful, and thus Jefferson has failed to show that his counsel performed deficiently. "Trial counsel's failure to pursue a futile motion does not constitute ineffective assistance." (Citation and punctuation omitted.) *Nickerson v. State*, 248 Ga. App. 829, 832 (2) (b) (545 SE2d 587) (2001).

(b) Jefferson next argues that his trial counsel was ineffective "[f]or failing to pursue the allegations of prosecutorial threats to [the victim]." But the trial transcript reflects that Jefferson's trial counsel elicited testimony from the victim during cross-examination that the State had threatened her that she would be arrested if she did not appear at court and testify,[6] and later during closing argument, counsel asserted that the victim had been coerced to testify favorably toward the State based on the threat of arrest. Moreover, Jefferson failed to present any testimony or other evidence at the motion for new trial hearing reflecting that there were any additional threats made to the victim that were not highlighted by trial counsel during his cross-examination of

[6] On redirect examination, the victim clarified that she had been subpoenaed to appear at trial and had been told that she would be arrested if she failed to comply with the subpoena.

14

the victim or during closing argument. Jefferson therefore failed to show that his counsel performed deficiently in addressing the alleged prosecutorial threats made to the victim. See, e.g., *Gaston v. State*, 307 Ga. 634, 642 (2) (d) (837 SE2d 808) (2020) ("The scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel.") (citation and punctuation omitted).

(c) Jefferson contends that his trial counsel was deficient in failing to object on hearsay grounds to the victim's testimony that Jefferson threatened to hit her so hard that she would be blinded in one eye, said that he wanted to kill her, and told her that he had been thinking about ways to do the killing. But Jefferson's statements to the victim "were his own and, therefore, were admissible as admissions of a party opponent." *Lyons v. State*, 309 Ga. 15, 28 (8) (d) (843 SE2d 825) (2020). See OCGA § 24-8-801 (d) (2) (A). "Failure to lodge a meritless objection does not support an ineffective assistance claim." *Lyons*, 309 Ga. at 28 (8) (d).

(d) Jefferson argues that his trial counsel was ineffective in failing to have voir dire transcribed. "[A]lthough objections and rulings thereon made during jury selection are required to be reported and made part of the trial record, there is no requirement that the entire jury selection be reported and made part of the record in

15

a nondeath penalty felony case." (Citation and punctuation omitted.) *Curtis v. State*, 330 Ga. App. 839, 842 (1) (a) (769 SE2d 580) (2015). Jefferson's speculation that error may have occurred during the unrecorded voir dire "is insufficient to show any deficiency on the part of counsel" or any prejudice resulting therefrom. *Dunlap v. State*, 291 Ga. 51, 53 (3) (727 SE2d 468) (2012). See *Curtis*, 330 Ga. App. at 842 (1) (a) (holding that counsel's failure to have voir dire transcribed did not "constitute a basis for an ineffective assistance of counsel claim"). Jefferson thus cannot succeed on this ineffective assistance claim.

(e) Jefferson asserts that his trial counsel's cross-examination of the victim "indicated that he was not listening nor taking notes when she was on direct examination." We have reviewed the trial transcript and conclude that it does not support Jefferson's blanket assertion. Rather, the transcript reflects that trial counsel's cross-examination of the victim fell within the broad range of professional conduct afforded trial attorneys. See *Goodson v. State*, 305 Ga. 246, 249 (2) (824 SE2d 371) (2019) (noting that to prove deficient performance, "[t]he criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct") (citation and punctuation omitted).

16

(f) Jefferson asserts that "[t]he trial court corrected trial counsel's misunderstanding of its ruling on the admissibility of the 911 tape" and later "had to correct trial counsel's confusion about a charge the [S]tate had just proposed." However, Jefferson fails to offer any explanation as to how these alleged "corrections" by the trial court demonstrate any conduct rising to the level of deficient performance by his trial counsel or resulted in any prejudice to him.

4. Lastly, Jefferson cites to our Supreme Court's recent decision in *State v. Lane*, 308 Ga. 10, 14 (1) (838 SE2d 808) (2020), where the Court held that "Georgia courts considering whether a criminal defendant is entitled to a new trial should consider collectively the prejudicial effect of trial court errors and any deficient performance by counsel–at least where those errors by the court and counsel involve evidentiary issues." As previously explained, Jefferson has failed to show any evidentiary errors by the trial court or that his trial counsel's performance was deficient in any respect. "Accordingly, where [Jefferson] has failed to show error, [he] has likewise failed to show cumulative error." *Crider v. State*, 356 Ga. App. 36, 50 (4) (846 SE2d 205) (2020).

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*